COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES, Appellant

v.

Anthony MAZZARINI, Jr.

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles, Appellant

v.

Anthony Mazzarini, Jr., d/b/a Park Way Service Station.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 1, 2006.

Decided Jan. 10, 2007.

Publication Ordered March 30, 2007.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

John Elash, Pittsburgh, for appellee.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (DOT) appeals from the October 27, 2005 Order of the Court of Common Pleas of Allegheny County (trial court), which vacated the respective two-month suspensions of Anthony Mazzarini, Jr. d/b/a Park Way Service Station (Park Way), and Anthony Mazzarini, Jr. (Mazzarini).

Mazzarini is the owner and operator of Park Way, which has been a state inspection service station since 1955. (Trial Court Transcript, Oct. 27, 2005(Tr.), at 20.) Park Way is "extremely busy," and Mazzarini conducts over one thousand inspections per year. (Tr. at 14.) On August 10, 2004, DOT issued a warning letter to Park Way for violations due to careless record-keeping. The violations were "12 insurance dates expired, 6 insurance dates left blank, and 3 road test blocks blank." (DOT Warning Letter, Aug. 10, 2004.) The letter provided, in pertinent part, that "[a]ll of [Park Way's] records and operating procedures must be brought up to date immediately and properly maintained in the future," and that "[a]ny future violations of the safety inspection station rules and regulations may result in the suspension of [Park Way's] inspection privileges." (DOT Warning Letter, Aug. 10, 2004.)

On July 15, 2005, DOT notified Park Way that its Certificate of Appointment as an official safety inspection station was being suspended for two months, pursuant to 75 Pa.C.S. § 4724, for "improper record keeping (fail[ing] to record rejections, total cost, brake and tire readings and odometer readings)." (DOT Order of Suspension of Official Inspection Station, July 15, 2005.) The same day, DOT notified Mazzarini that his certificate as an Official Safety Inspector was being suspended for two months, pursuant to 75 Pa.C.S. § 4726, for "improper record keeping (fail[ing] to record rejections, total cost, brake and tire readings and odometer readings)." (DOT Order of Suspension of Official Safety Inspector, July 15, 2005.) Park Way and Mazzarini each timely appealed these suspensions in the Court of Common Pleas of Allegheny County (trial court).

On October 27, 2005, the trial court consolidated the two appeals and held a hearing de novo. At the hearing, DOT offered the testimony of Quality Assurance Officer Neal Lutz, who audited Park Way in March 2005. (Tr. at 4.) Mazzarini testified on behalf of both himself and Park Way.

DOT offered seventeen completed MV–431 forms (Inspection Records) that the trial court admitted into evidence. Each Inspection Record contains space for information on ten separate inspections to be recorded. Each form also contains blocks to record approximately forty different pieces of information regarding each inspection.[1] During the audit, Lutz discov-

---

1. The MV–431 form contains blocks for: inspection number, date, registrant's name, city, county, vehicle identification number, year/make/body of the vehicle, registration number, insurance company name, policy number, expiration date, work order number,

ered several discrepancies between information contained in work orders and the vehicle inspection information recorded on the Inspection Records. (Tr. at 5–6.) Crucially, the Inspection Records were missing information, such as several brake and tire readings.[2] (Tr. at 6.) In total, there were thirty-two inspections where one or more items of information were missing.[3]

Mazzarini testified that the inspection information is first put into a computer and then transcribed onto the Inspection Records. (Tr. at 20.) Lutz acknowledged that Mazzarini documented information on a computer, and that Mazzarini had been unable to retrieve all of the information stored on the computer. (Tr. at 14.) Specifically, Mazzarini "was able to produce records, but the tires and brake readings" were irretrievable. (Tr. at 15.) Mazzarini testified that he notified DOT about the problem with his computer and, "rather than lying" and "putting some inaccurate information" on the forms, he "just simply left [certain blocks] blank." (Tr. at 21.)

During cross-examination, Mazzarini admitted that Park Way had been issued a warning letter for careless record keeping on August 10, 2004. (Tr. at 22.) Mazzarini agreed that the warning was issued, in part, because six inspections were missing insurance expiration dates. (Tr. at 22.) Further, in response to the assertion that even after the warning letter was sent, there were recorded inspections where information was left blank on the Inspection Records, Mazzarini testified that this was "accurate." (Tr. at 23.)

On October 27, 2005, the trial court entered an order sustaining Park Way and Mazzarini's appeal. On November 28, 2005, DOT filed its Notice of Appeal. The trial court filed, on February 14, 2006, its Pa. R.A.P. No.1925(a) opinion in support of its order. The trial court found Mazzarini a more credible witness than Lutz.[4] Also, the trial court found DOT's reliance on *Department of Transportation, Bureau of Traffic Safety v. Cormas*, 32 Pa.Cmwlth. 1, 377 A.2d 1048 (1977), and *Department of Transportation, Bureau of Motor Vehicles v. Tutt*, 133 Pa.Cmwlth. 537, 576 A.2d 1186 (1990), to be misplaced. The trial court distinguished *Cormas* on the basis that the service station there was cited for furnishing inspection stickers without an inspection. (Trial Ct. Op. at 3.) The court fur-

---

old and current odometer readings, sticker number, sticker expiration month and year, registration verified, tires and wheels, steering suspension, exhaust system, fuel system, glazing and mirrors, lights/wiring/switches, body/doors/latches, brake system (L Front/L Rear/R Front/R Rear), road test, catalytic converter, fuel injection system, pcv valve, egr valve, and air pump evaporative control system. (DOT MV–431 Inspection Records.) The record seems to have two versions of the MV–431, one from May 2003 and one from December 2003, that have some formatting differences, but are substantively the same.

2. For example, on one Inspection Record there was no written notation indicating brake readings for Inspection No. 240 on February 14, 2004. (Tr. at 6–7; *see also* DOT MV–431 Inspection Records, R.R. 72a.)

3. These included: eleven inspections where the old odometer reading was not recorded; one inspection for which the current odometer reading was not recorded; eight inspections where brake readings were not recorded; three inspections where tire readings were not recorded; eight inspections where the road test result block was not completed; and one inspection where the total cost of the inspection was not recorded. (Tr. at 7–8.)

4. As DOT emphasizes on appeal, both witnesses testified as to the same facts (DOT's Br. at 23), and Park Way and Mazzarini admit that the material facts of the case were not contested by either party. (Mazzarini's Br. at 6.) Thus, the trial court's credibility determination has no effect on the weight given to the evidence in this case.

ther distinguished *Tutt* because the service station owner there was cited for issuing fictitious certificates and other numerous irregularities. (Trial Ct. Op. at 3.) This appeal followed.[5]

Before this Court, DOT argues that the trial court abused its discretion in ruling that DOT failed to prove that Park Way and Mazzarini had each committed an improper recordkeeping violation or, in the alternative, that DOT failed to prove that Park Way had committed a second careless recordkeeping violation and that Mazzarini had committed a first careless recordkeeping violation.

DOT argues that the undisputed facts support a finding that both Park Way and Mazzarini were liable for improper recordkeeping. DOT's regulations contain three categories of unlawful recordkeeping by official inspection stations and certified inspection mechanics. *Department of Transportation, Bureau of Driver Licensing v. Midas Muffler Shop,* 108 Pa. Cmwlth. 199, 529 A.2d 91, 93 (1987). The categories are: (1) fraudulent recordkeeping, 67 Pa.Code § 175.51(a)(2)(i); (2) improper recordkeeping, 67 Pa.Code § 175.51(a)(2)(ii); and (3) careless recordkeeping, 67 Pa.Code § 175.51(a)(2)(viii). Each category has a different penalty attached to it based on the number of violations involved. Relevant to this case, the stated penalty for the first improper recordkeeping violation is a two-month suspension. 67 Pa.Code § 175.51(a)(2)(ii). The penalty for the first careless recordkeeping violation is a warning letter, and for a second violation the penalty is a four-month suspension. 67 Pa.Code § 175.51(a)(2)(viii).

While the terms "fraudulent," "improper," and "careless," are not defined in the regulations, this Court has "construe[d] the terms according to their common and approved usage." *Fairfield Ford/VW/Hyundai/Mitsubishi v. Department of Transportation, Bureau of Motor Vehicles,* 823 A.2d 267, 272 (Pa.Cmwlth. 2003); *see also Department of Transportation, Bureau of Driver Licensing v. Cappo,* 106 Pa.Cmwlth. 481, 527 A.2d 190, 192 (1987). With respect to improper recordkeeping, "improper" means "not accordant with fact, truth, or right procedure, *i.e.,* incorrect, inaccurate." *Cappo,* 527 A.2d at 193 (quotations omitted). With respect to careless recordkeeping, "careless" means "not taking ordinary or proper care, *i.e.,* neglectful, inattentive." *Id.*

This Court has articulated the respective burdens of proof regarding improper recordkeeping and careless recordkeeping. To prove improper recordkeeping, it is necessary to show "that inaccuracies exist or that incorrect information is included in the records." *Tutt,* 576 A.2d at 1189. In *Tutt,* this Court further clarified the scope of careless recordkeeping:

> [C]areless recordkeeping is a lesser included offense of improper recordkeeping. Inaccuracies and incorrect information find their way into records because of incorrect methods, procedures, and practices in their keeping. That the inaccuracies exist is sufficient proof to find liability. *A showing of inadvertence, however, lowers the presence of the inaccuracy to careless recordkeeping and requires that a standard of ordinary and proper care*

**5.** This Court's scope of review in an inspection certification suspension case is limited to a determination of whether an error of law was committed or whether the findings of the trial court are supported by substantial evi- dence. *Fairfield Ford/VW/Hyundai/Mitsubishi v. Department of Transportation, Bureau of Motor Vehicles,* 823 A.2d 267, 272 n. 11 (Pa. Cmwlth.2003).

*be applied* when determining whether negligence has resulted in the inaccuracy.

*Tutt,* 576 A.2d at 1189 (emphasis added). As further clarification, in *Fairfield,* we interpreted this language to mean:

> [I]f inaccuracies exist and they are the result of following incorrect record-keeping procedures, then the record keeping is "improper." However, if inaccuracies exist and they are the result of failing to take ordinary care while following proper record-keeping procedures, then the record keeping is "careless."

*Fairfield,* 823 A.2d at 272.

■ DOT argues that Park Way and Mazzarini are liable for improper record-keeping violations because the omissions in the Inspection Records were not the result of "mere inadvertence." (DOT's Br. at 25.) Instead, DOT argues they were the result of Mazzarini's admitted practice of making deliberate omissions. As Mazzarini testified, the vehicle inspection information was first transcribed on the computer and, from there, transcribed onto the appropriate forms. (Tr. at 20.) Sometimes, the nine-year-old computer system would overload, which prevented Mazzarini from retrieving certain information from the computer. (Tr. at 21–22.) When Mazzarini could not retrieve certain information from the computer, he simply left it off the forms. (Tr. at 21.) Despite this problem of retrieving information from the computer, and his admission that Park Way received the August 10, 2004 warning letter for careless recordkeeping based on similar omissions, Mazzarini continued to use the computer to record and, thereafter, to retrieve the results of vehicle inspections at least until March 7, 2005, which is the date of the last inspection recorded on the Inspection Records. (DOT Inspection Records, R.R. 88a.) Therefore, DOT

maintains that Mazzarini's "admitted *practice* of leaving required items off the MV–431 sheets ... cannot be considered 'accordant with ... right procedure' " and, as such, Park Way and Mazzarini are liable for improper recordkeeping. (DOT's Br. at 25 (quoting *Cappo,* 527 A.2d at 193).)

Park Way and Mazzarini rely upon the trial court's reasoning that this case is different from *Tutt.* In *Tutt,* the service station owner was cited for issuing fictitious certificates and other numerous irregularities. This Court found that the owner in *Tutt* was liable merely for careless recordkeeping. Given the significant difference between the conduct in *Tutt,* which only amounted to careless recordkeeping, and the conduct in this case, Park Way and Mazzarini argue that the trial court properly found that their conduct did not constitute improper recordkeeping.

■ We agree with DOT. This case is factually distinguishable from *Tutt,* in that unlike the service station owner in *Tutt,* who *inadvertently* committed recordkeeping violations out of "neglect and inattention," *Tutt,* 576 A.2d at 1189, Mazzarini *deliberately* left required items off the Inspection Records. DOT's regulations require that the Inspection Record "be neat and legible and *completed in its entirety.*" 67 Pa.Code § 175.42(d) (emphasis added). Mazzarini actively ignored this requirement, despite receiving a warning letter for careless recordkeeping in August 2004 based on similar omissions, and knowing that his nine-year-old computer continually prevented him from retrieving inspection information. The warning letter clearly provided that Park Way's "records and operating procedures must be brought up to date immediately and properly maintained in the future." (DOT Warning Letter, Aug. 10, 2004.) Nevertheless, Mazzarini admitted that even after Park Way received the warning letter, information

was left blank on the Inspection Records. Mazzarini knew, or should have known, that he was following incorrect record-keeping procedures. While Mazzarini may have believed it was better to leave inaccurate information off the forms than "to lie," a practice that clearly violates DOT's regulations cannot be "accordant . . . with proper procedure." As this Court found in *Fairfield*, "if inaccuracies exist and they are the result of following incorrect recordkeeping procedures, then the record keeping is 'improper.'" 823 A.2d at 272. Therefore, Park Way and Mazzarini are liable for improper recordkeeping.[6]

Notably, Park Way and Mazzarini advance their contention, first argued successfully in the court below and essentially reiterated here, that the number of violations was *de minimis*.[7] Park Way and Mazzarini suggest that, applying *Fairfield*, the number of violations here does not amount to improper recordkeeping. (Mazzarini's Br. at 9–10.) This argument is flawed. In *Fairfield*, there was "no question that Fairfield followed [the correct recordkeeping] procedures," including filling out the Inspection Record in its entirety, and that he had "recorded thousands of inspections each year in compliance with these procedures." 823 A.2d at 272. Thus, "[t]he fact that Fairfield made errors [did not] mean that Fairfield's recordkeeping procedures were 'improper.'" *Id.* at 272–273.

In this case, by contrast, Mazzarini did not follow the proper recordkeeping procedures when he deliberately omitted required inspection information from the Inspection Records in violation of 67 Pa.Code § 175.42(d), which requires that each form "be . . . completed in its entirety." These omissions were not the result of the "errors" to be expected when a service station conducts over a thousand inspections a year, *see Fairfield*, 823 A.2d at 272, but, rather, the result of Mazzarini's incorrect recordkeeping procedure of making deliberate omissions. Thus, the number of violations is not dispositive in this case because Mazzarini did not follow proper recordkeeping procedures.

DOT argues that the trial court committed an abuse of discretion in finding that Park Way and Mazzarini were not liable for improper recordkeeping. DOT alleges that the trial court "gave a break" to Park Way and Mazzarini because Mazzarini's "business had never received a suspension, and . . . the information which was missing was due to computer problems." (Trial Ct. Op. at 2.) DOT relies on the proposition in *Cormas* that "it is a manifest abuse of discretion for a trial court to modify a suspension, or, worse, to reverse a suspension, when it finds that the party charged has committed a punishable violation but it disagrees with the penalty imposed." *Cormas*, 377 A.2d at 1050. In support of its argument, DOT emphasizes that the trial court apparently ignored the fact that Park Way received a warning letter for careless recordkeeping, which was based, in part, on omissions from the Inspection Records. Also, DOT argues that if a service station was able to blame its computer

---

[6] Because this Court finds that Park Way and Mazzarini's recordkeeping violations were *improper*, we need not determine whether these violations were *careless*, a lesser offense.

[7] Park Way and Mazzarini argue that "thirty-two mistakes in 38,000 is a 0.8% error rate or only one mistake for every 1187 entries, which can hardly be defined as 'not taking ordinary or proper care', the definition for 'careless', much less as 'improper.'" (Mazzarini's Br. at 10.) Contrary to their characterization, the record actually establishes thirty-two *inspections* where *one or more violations* were found. Certainly, the error rate was higher than Park Way and Mazzarini suggest.

for its unlawful recordkeeping, the service station would never have any reason to upgrade its computer system to accommodate a greater number of inspections.

DOT is correct. The trial court's opinion highly suggests that it overlooked Park Way and Mazzarini's recordkeeping violations because of the court's disagreement with the penalty imposed. As this Court held in *Department of Transportation, Bureau of Traffic Safety v. Verna*, 23 Pa.Cmwlth. 260, 351 A.2d 694, 695 (1976), the trial court "may not, because of the possible unfairness or inequity of the result, reverse ... or modify the penalties imposed." In vacating the suspensions, the trial court reasoned that Mazzarini's business had never received a suspension before and that the information was missing due to computer problems. While these reasons appear to be based on considerations of fairness and equity, they actually ignore important evidence in the record. First, the trial court's opinion does not even refer to the August 2004 warning letter that Mazzarini admitted receiving and which clearly indicates that Mazzarini was aware of the omissions in the Inspection Records as of that date. The letter placed Mazzarini on notice that he was violating DOT's regulations and that, if he did not conform his conduct to the rules, he would receive a suspension. This letter, in conjunction with Mazzarini's computer problems and admitted practice of leaving required items off the Inspection Records, requires us to reach a different conclusion.

Also, it can be inferred from Mazzarini's testimony that he was aware of his computer problem and how it prevented him from including required information on the

Inspection Records well before Lutz's March 2005 audit.[8] In any event, Mazzarini admitted a practice of omitting required information he could not retrieve from the computer. Mazzarini could not depend on his unreliable computer to escape liability when he knew that it prevented him from including required information on the forms. Indeed, the trial court's decision invites certified inspection stations and mechanics to bypass the explicit requirements of DOT's regulations by relying upon problems they know about and which can be easily corrected. After realizing that his computer had a problem, Mazzarini could have corrected it. Mazzarini's knowledge of the problem, and the deliberateness with which he declined to correct it, require a conclusion of improper recordkeeping. Therefore, it was an abuse of discretion for the trial court to ignore the substantial, *uncontradicted* evidence in the record, and the strong inferences drawn from it, that Mazzarini deliberately acted in contravention of DOT's regulations.

For the foregoing reasons, the order of the Court of Common Pleas of Allegheny County is reversed.

### *ORDER*

**NOW,** January 10, 2007, the Order of the Court of Common Pleas of Allegheny County in the above-captioned matters is hereby **REVERSED.**

---

**8.** From Mazzarini's testimony, it can be inferred that he was aware of this problem for a substantial period of time, at least before Lutz's March 2005 audit and perhaps before the August 2004 warning letter, since it was omissions from the MV–431 forms that were discovered during the audit and which prompted the warning.