IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yongs Place, Inc.,                          :
                                            :
                    Appellant   :
                                            :
          v.                    : No. 483 C.D. 2021
                                : Submitted:  July 1, 2022
Pennsylvania Liquor             :
Control Board                   :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  May 12, 2023


          Yongs Place, Inc. (Licensee) appeals from an order of the Court of
Common Pleas of Philadelphia County (trial court), which, following a *de novo*
hearing, affirmed the decision of the Pennsylvania Liquor Control Board (PLCB)
denying Licensee's liquor license renewal under the Liquor Code,[1] based on
numerous citations and incidents of disturbances in or around the licensed premises.
Licensee contends that the trial court's findings of fact are not supported by
substantial evidence; the trial court erred or abused its discretion by not excluding
improperly admitted evidence and the PLCB's untimely brief; by failing to consider
Licensee's evidence; and by not determining that the unlawful commingling of the

_____

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

PLCB's prosecutorial, legislative, and adjudicative functions violated Licensee's due process rights. Discerning no error, we affirm.

## I. Background

Licensee, whose shareholders are Hyon Yong and Sophia Yong (collectively, Shareholders), filed an application with the PLCB for the renewal of Restaurant Liquor License No. R-14561 (license) for the renewal period beginning November 1, 2018, and ending October 31, 2020. Licensee operates a small delicatessen located at 5937-5939 Market Street, Philadelphia, Pennsylvania (licensed premises), within the City of Philadelphia's 19th Police District. The licensed premises has been licensed since 1991.

The PLCB's Bureau of Licensing (Bureau), pursuant to Section 470 of the Liquor Code, 47 P.S. §4-470, notified Licensee that it was objecting to the renewal by written notice. The Bureau asserted that Licensee abused its licensing privilege based on 9 prior citations, approximately 81 incidents of disturbances in or around the licensed premises, and by its failure to operate as a *bona fide* restaurant. The Bureau also alleged that Shareholders are not responsible persons of good repute and/or have become persons of ill repute.

Pursuant to Section 464 of the Liquor Code, 47 P.S. §4-464, a hearing on the nonrenewal was held on April 26, 2019, before a PLCB hearing examiner. In support of the nonrenewal, the Bureau presented testimonial and documentary evidence. The Bureau's evidence included the testimony of John Stanford, Captain of the Philadelphia Police Department (Department) for the 19th Police District (Captain Stanford); 81 police incident, investigation, and arrest reports (police reports) describing criminal activity that occurred at or in the vicinity of the licensed

2

premises between January 2016, and May 2018, which the trial court admitted over Licensee's objections, *see* Reproduced Record (R.R.) at 96a, 354a-1181a (Bureau Exhibits B9 to B90); and 9 citations covering various violations of the Liquor Code over the course of the license, *see id.* at 284a-341a (Bureau Exhibit B3), and a suspension, *see id.* at 342a-48a (Bureau Exhibits B4-B5).

In opposition, Licensee offered testimonial evidence regarding the character of the neighborhood, police incidents, security issues and services, and remedial measures. More particularly, Licensee presented the testimony of Police Officer Ian Nance, who testified regarding the character of the neighborhood; Police Officer Terrelle Greene, who testified regarding a police incident report documented in Exhibit B9 (R.R. at 354a-405a); William La Torre, who testified to consulting on security issues at the licensed premises; Amin Ward (Ward), who testified regarding the character of the neighborhood and providing security services; and Hyon Yong's son-in-law, Sean Lin (Lin), who testified regarding remedial measures taken after the PLCB sent the non-renewal letter.

Based upon the testimony and evidence presented, the hearing examiner recommended the denial of the renewal application. R.R. at 53a. Following review of the record and hearing examiner's recommendation, by order dated July 17, 2019, the PLCB refused Licensee's renewal application. *Id.* at 9a.

Licensee appealed to the trial court.[2] At the start of the hearing before the trial court, Licensee objected to the timeliness of the PLCB's pre-hearing brief, but did not file a motion to quash the brief. PLCB counsel stated that he in good faith attempted to file a brief with the court, but was not sure what happened. *See* R.R. at 1383a-89a. Absent a motion to quash and accepting PLCB counsel's good

---

[2] In response, the PLCB issued an opinion in support of its order. *See* R.R. at 1223a.

3

faith attempt, the trial court accepted the brief and allowed the PLCB to participate in the hearing. Trial Court Opinion, 9/15/21, at 3; *see* R.R. at 1388a-89a.

The PLCB offered into evidence the complete record of the proceedings before the PLCB hearing examiner. Licensee offered additional testimony from Hyon Yong, Lin, and Ward. The trial court considered the matter *de novo* based upon consideration of the PLCB record, additional testimony presented, and the parties' briefs and arguments. By order dated March 17, 2021, the trial court affirmed the PLCB's decision and denied Licensee's appeal without opinion. Licensee's appeal to this Court followed.[3] At the direction of the trial court, Licensee filed a Pa. R.A.P. 1925(b) statement of errors complained of on appeal (1925(b) Statement), asserting a lack of substantial evidence, improper admission of police reports, disregard of new testimony offered, and due process violations. Trial Court Original Record (O.R.) at 230-32.[4]

Thereafter, the trial court issued a Pa. R.A.P. 1925(a) Opinion in support of its March 17, 2021 order.[5] Therein, the trial court addressed the

---

[3] Our review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence, whether it abused its discretion, or whether it committed an error of law. *First Ward Republican Club of Philadelphia v. Pennsylvania Liquor Control Board.*, 11 A.3d 38, 43 n.9 (Pa. Cmwlth. 2010).

[4] Because the Original Record was filed electronically and was not paginated, the page numbers referenced in this opinion reflect electronic pagination.

[5] A trial court reviewing a decision of the PLCB not to renew a liquor license hears the matter *de novo* and makes its own findings of fact and conclusions of law. Section 464 of the Liquor Code, 47 P.S. §4-464; *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14, 16 (Pa. 1994). Although the trial court did not render its own findings of fact and conclusions of law, or adopt the PLCB's, the trial court's Pa. R.A.P. 1925(a) Opinion provides sufficient detail regarding the evidence relied upon and the legal basis for its decision to permit meaningful appellate review. *See Commonwealth v. Stevenson*, 832 A.2d 1123, 1126 (Pa. Super. 2003) (an appellate court "may look at the trial court's [Pa. R.A.P.] 1925(a) opinion to garner findings of fact and conclusions of law").

4

assignments of error and set forth the various factors that supported affirming the PLCB's denial of the renewal application. The trial court "independently evaluated the evidence that was presented to the PLCB hearing examiner" and considered new evidence presented. Trial Court Opinion, at 6. The trial court set forth a detailed history of Licensee's citations and incidents as reflected in the Bureau's exhibits. Between January 2016 and May 2018, there were 81 police incidents at or in the vicinity of the licensed premises – 28 of those incidents involved illegal drugs, and 52 involved alcohol-related offenses. Licensee also accrued 9 citations covering 15 discrete violations of the Liquor Code, including 6 separate counts for failing to operate as a *bona fide* restaurant. As for Licensee's renewed objection to the admission of the police reports, the trial court determined that the reports were properly authenticated and admissible under the business records exception. The trial court also considered additional testimony Licensee presented at the *de novo* hearing, but concluded that the testimony was not materially different from the evidence previously presented in the administrative proceeding and did not alter the outcome. As for Licensee's due process argument, the trial court concluded that Licensee waived the issue by failing to raise it at the administrative proceeding. Notwithstanding, the trial court concluded that its *de novo* review cured any alleged constitutional violations.

## II. Issues

Licensee raises four issues on appeal. First, Licensee contends that the trial court's findings of fact are not supported by substantial evidence. Second, Licensee argues that the trial court abused its discretion by improperly admitting the police reports, and by not excluding the PLCB's untimely brief, which was filed

5

more than one year after it was due.  Third, Licensee asserts that the trial court erred by not properly considering the testimony offered by Licensee, including evidence from its expert witness regarding the adequacy of remedial measures undertaken in response to the PLCB's notification of alleged criminal activity in the vicinity of the licensed premises.  Fourth, Licensee maintains that the PLCB's nonrenewal process violated Licensee's due process rights by unlawfully commingling prosecutorial, legislative, and adjudicative functions.

## III. Discussion
### A. Failure to Exclude Police Reports & Untimely Brief

We begin our discussion by first addressing Licensee's arguments regarding the admissibility of evidence because this is pertinent to the substantial evidence discussion.  Licensee contends that the trial court abused its discretion by not excluding but relying upon police reports admitted at the administrative hearing over Licensee's objections.  Licensee claims that all of the police reports were hearsay and a great majority of them were not properly authenticated by any witness with any personal knowledge of the events alleged within the police reports.[6]

---

[6] The PLCB contends that Licensee waived the hearsay issue by failing to raise it at the administrative hearing when the police reports were initially offered or in Licensee's 1925(b) Statement.  We disagree.

At the administrative hearing, Licensee raised confrontation clause and due process objections to the police reports, which it has since abandoned on appeal, but it did not expressly raise a hearsay objection.  *See* R.R. at 80a-96a.  In fact, Licensee seemingly conceded that the police reports would be admissible under a hearsay exception.  *See id.* at 81a, 96a.  Nevertheless, our review of the record reveals that Licensee consistently challenged the witnesses' personal knowledge of and ability to properly authenticate the subject reports, which adequately supports the preservation of a hearsay objection.  *See id.* at 105a-08a.

As for Licensee's failure to include the issue in its 1925(b) Statement, our review reveals that the issue was fairly comprised therein.  *See* O.R. at 230 (record "included improperly-admitted **(Footnote continued on next page…)**

6

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted therein. Pa. R.E. 801; *First Ward Republican Club of Philadelphia v. Pennsylvania Liquor Control Board*, 11 A.3d 38, 47 (Pa. Cmwlth. 2010). "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa. R.E. 802. The police reports in question clearly constitute hearsay, "because they contain out-of-court statements offered to prove the truth of the matters asserted therein." *First Ward*, 11 A.3d at 44.

Nevertheless, evidence that constitutes hearsay may be admissible if it falls within an exception to the hearsay rule. *First Ward*, 11 A.3d at 44; Pa. R.E. 803. *Id.* The hearsay exception relevant here is the "business records" exception. *See* Pa. R.E. 803(6)(B). Pa. R.E. 803(6) permits the admission of

> [a] record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;

---

evidence"); *id.* at 232 ("improper admission of police reports"). Furthermore, the trial court addressed the issue of hearsay and whether it "abused its discretion and/or committed an error of law by considering evidence that was . . . unlawfully admitted into the record" before ultimately concluding that the police reports were properly authenticated and admitted. Trial Court Opinion, at 1; *see id.* at 4-7. Thus, we decline to find waiver.

7

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with [Pa. R.E.] 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa. R.E. 803(6).

An equivalent rule is embodied in Section 6108 of the Judicial Code, 42 Pa. C.S. §6108, which is also referred to as the "Uniform Business Records as Evidence Act." Section 6108(b) and (c) provides:

(b) **General rule**.—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

(c) **Definition**.—As used in this section "business" includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

42 Pa. C.S. §6108(b), (c). The General Assembly enacted Section 6108 "to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition, or an event was made in the regular course of business, at or near the time of the act, condition, or event, and where the sources of information, method, and time of preparation were such as to justify its admission." *First Ward*, 11 A.3d at 45.

Pa. R.E. 803 and Section 6108 "substantially overlap in that both generally require that a custodian or other qualified witness testify that the record

8

was made 'at or near the time' of the event recorded and that the record was kept in the regular course of business." *Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019). As we have explained:

> [I]f a qualifying witness can provide sufficient information relating to the preparation and maintenance of the records to justify the presumption of trustworthiness for the business records exception, a sufficient basis is provided to offset the hearsay character of the evidence and it is not necessary to produce either the preparer or the custodian of the record at the time the entries were made.

*First Ward*, 11 A.3d at 45 (citing *In re Estate of Indyk*, 413 A.2d 371, 373 (Pa. 1979)). "So long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." *Id.* at 46 (emphasis omitted). "An individual may be a qualifying witness and his testimony may lay a proper foundation for the admission of a report if his responsibilities include the review of the report in question and he testifies that the report was prepared by a subordinate of his and maintained for him by a member of his staff." *Id.*

Here, Captain Stanford testified regarding his oversight of the 19th District and the command structure in place. R.R. at 70a-72a. Over 200 officers report to him through the chain of command, which includes 5 lieutenants and 1 platoon commander. *Id.* at 71a-72a. He testified that his subordinate officers prepared the subject police reports under a standing directive to prepare reports at or near the time of the incident in a manner prescribed by the Department. *Id.* at 72a, 91a. There are different police report forms depending on the nature of the incident. *Id.* at 72a. Although Captain Stanford was not the responding officer to the incidents or the actual preparer of the reports, he was responsible for reviewing the reports.

9

*Id.* at 89a. Once a report is reviewed and approved, it is maintained by the District electronically. *Id.* at 89a-90a.

On cross-examination, Captain Stanford testified that he was not promoted to the rank of captain of the 19th Police District until March 7, 2017. R.R. at 104a. He conceded that some of the police reports preceded his tenure as captain. *Id.* at 104a-05a. Our review reveals that approximately half of the reports preceded his tenure. *See id.* at 354a-783a (Bureau Exhibits B9-B47). However, on re-direct examination, Captain Stanford testified that the same practice for reviewing and approving police reports was in place before he took the job. "That's a [D]epartment policy . . . not a one-person practice." *Id.* at 119a. He testified that all of the police reports offered into evidence would have been reviewed and approved in the same manner by his predecessor. *Id.* at 119a-20a.

In addition, Police Officer Terrelle Greene testified regarding his personal knowledge of one of the incidents detailed in a police report, Bureau Exhibit B9 (R.R. at 354a-405a), occurring on January 13, 2016. R.R. at 140a-151a. Officer Greene testified he was conducting surveillance of narcotics activity near the licensed premises and detailed a hand-to-hand drug transaction taking place on the licensed premised. *Id.*

Upon review, Captain Stanford's testimony provided sufficient information relating to the preparation and maintenance of the reports to justify a presumption of trustworthiness under the business records exception to offset the hearsay character of the evidence. *See First Ward*, 11 A.3d at 45. He detailed the process by which his officers prepared and maintained such reports and his review of them. Captain Stanford also provided sufficient testimony that the same practice of preparing and maintaining police incident reports was in place under his

10

predecessor. *See Bayview Loan*, 206 A.3d at 486 (witness's testimony that bank records, which were acquired by a third-party bank, were prepared in the same manner using the same process of recordation as the custodian bank supported the trustworthiness nature of the documents); *Indyk*, 413 A.2d at 373 (holding that the trial court did not abuse its discretion in admitting exhibits where the authenticating witness only had personal knowledge of the record-keeping practices). In addition, Officer Greene's personal knowledge authenticated Bureau Exhibit B9. Absent evidence indicating a lack of trustworthiness, we conclude that the trial court did not abuse its discretion by admitting and relying upon these documents under the business record exception to the hearsay rule.[7]

In addition, Licensee contends that the trial court abused its discretion by not excluding the PLCB's untimely brief, which was filed more than one year after it was due.[8] We disagree.

It is within the trial court's sound discretion to exclude a party's brief and participation in argument for failing to comply with its scheduling order. *Smith v. City of Philadelphia*, 147 A.3d 25, 29 (Pa. Cmwlth. 2016); *King v. City of Philadelphia*, 102 A.3d 1073, 1077 (Pa. Cmwlth. 2014). Trial courts are permitted to impose sanctions for noncompliance with procedural rules or noncompliance with court orders. *King*, 147 A.3d at 29. "[S]uch determinations will not be disturbed absent an abuse of discretion.'" *Id.* (quoting *Muth v. Ridgway Township Municipal Authority*, 8 A.3d 1022, 1027 (Pa. Cmwlth. 2010)). "[A] court abuses its discretion

---

[7] Although Licensee has abandoned its confrontation clause argument on appeal, we note that "firmly rooted exceptions to the hearsay rule do not violate the Confrontation Clause." *See Commonwealth v. Carter*, 932 A.2d 1261, 1264-65 (Pa. 2007) (police crime lab report fell within firmly rooted business record exception to hearsay rule).

[8] Although Licensee failed to raise this issue in its 1925(b) Statement, *see* O.R. at 230-32, the PLCB did not assert waiver and the trial court addressed the issue in its 1925(a) Opinion.

when it misapplies the law, exercises its judgment in a manifestly unreasonable manner, or reaches a conclusion as a result of partiality, prejudice, bias or ill will." *In re Private Tax Sale of Premises 214 Plushmill Road*, 533 A.2d 1117, 1119 (Pa. Cmwlth. 1987).

Here, the trial court issued an amended briefing schedule setting deadlines by which the parties were required to file briefs. Licensee's brief was due on or before January 2, 2020; the PLCB's brief was due on or before February 6, 2020. Although Licensee filed its brief in a timely manner, the PLCB did not. A year later, at the February 12, 2021 *de novo* hearing, Licensee raised the issue of untimeliness for the first time. *See* R.R. at 1383a-86a. Upon reviewing the docket, the PLCB acknowledged its inadvertent omission to properly file the brief, but asserted a good faith defense. *Id.* at 1386a-88a. Licensee did not file a motion to quash or assert any prejudice by the delay. *Id.* at 1388a. The PLCB maintained the same legal position as it did in the administrative hearing; thus, Licensee had notice of the PLCB's arguments and was able to prepare its case accordingly. Although the trial court had discretion to quash the PLCB's brief and preclude the PLCB's participation in the hearing for noncompliance with a court order, the law did not require it to do so. *See Smith; King*. Considering that Licensee failed to file a motion to quash in the year preceding the hearing, the PLCB's offer of good faith, and the absence of prejudice, the trial court permitted the late filing and allowed the PLCB to participate at the hearing. Upon review, we discern no abuse of discretion.

**B. Substantial Evidence**

Next, Licensee contends that the trial court's findings are not supported by substantial evidence. The trial court based its decision on three key factors: (1) the police reports that attributed alleged criminal and/or civil activity of individuals

12

not employed by Licensee to Licensee; (2) a PLCB-imposed suspension of Licensee's License on January 8, 2018, for alleged insufficient seating and insufficient food, even after the PLCB subsequently lifted the suspension on January 17, 2018, following a successful PLCB inspection; and (3) prior citations that occurred and were previously adjudicated by the PLCB's hearing examiner, with such citations dating as far back as 1991. Licensee maintains that there is no evidence that Licensee knew or should have known of the criminal activity taking place. Police did not inform Shareholders of the drug activity, which was based on privileged intelligence by experienced officers with specialized narcotics training, and was certainly not within the knowledge, experience, or training of Shareholders or its employees.

Under the Liquor Code, a renewal of a liquor license is not automatic. *See* Section 470(a.1) of the Liquor Code, 47 P.S. §4-470(a.1). The PLCB may, in its discretion, refuse to renew a liquor license for many reasons. *Id.* Specifically, Section 470(a.1) of the Liquor Code, provides in pertinent part:

> (a.1) The Director of the Bureau [] may object to and the [PLCB] may refuse a properly filed license application:
>
> (1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the [PLCB];
>
> (2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the [PLCB] or were involved in a license whose renewal was objected to by the Bureau [] under this section;

13

(3) if the licensed premises no longer meets the requirements of this act or the [PLCB]'s regulations; or

(4) due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, the [PLCB] may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The [PLCB] may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

47 P.S. §4-470(a.1).

A trial court reviewing a PLCB decision not to renew a liquor license hears the matter *de novo*, and may sustain, alter, modify, or amend the PLCB's order even when it is based upon the same evidence presented before the PLCB. *First Ward*, 11 A.3d at 47. The trial court's findings must be supported by substantial evidence, which is such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Id.* at 43 n.9.

The trial court may "consider all past adjudicated Liquor Code violations no matter when they occurred." *Id.* Licensees are held strictly liable for violations of the Liquor Code that occur on the licensed premises. *Pennsylvania Liquor Control Board v. TLK, Inc.*, 544 A.2d 931, 933 (Pa. 1988) (interpreting Section 471 of the Liquor Code, 47 P.S. §4-471, involving revocation).[9] Even a

---

[9] The PLCB's discretion under Section 470 for renewing licenses is similar to its discretion under Section 471 for revoking and suspending licenses, such that cases dealing with Section 471 are instructive. *See Rosing, Inc. v. Pennsylvania Liquor Control Board*, 690 A.2d 758, 761 (Pa. Cmwlth. 1997); *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board*, 631 A.2d 789, 791 (Pa. Cmwlth. 1993).

14

single Liquor Code violation may be sufficient grounds to support a decision refusing a renewal application. *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board*, 631 A.2d 789, 791 (Pa. Cmwlth. 1983).

In addition, licensees "may also be held accountable for non-Liquor Code violations, if it can be established that there was a pattern of illegal activity on the licensed premises about which the licensee knew or should have known, and the licensee failed to take substantial steps to prevent such activity." *Paey Associates, Inc. v. Pennsylvania Liquor Control Board*, 78 A.3d 1187, 1193 (Pa. Cmwlth. 2013); *accord TLK, Inc.*, 544 A.2d at 933.

It is appropriate for the PLCB to look at a licensee's pattern of violations for which penalties have already been paid in determining whether to renew a license. *Atiyeh v. Pennsylvania Liquor Control Board*, 629 A.2d 182, 183 (Pa. Cmwlth. 1993); *see TLK, Inc.*, 544 A.2d at 933. Regardless of when the violations may have occurred, a licensee's entire citation history may be examined to see if a pattern of activity has emerged, which merits the nonrenewal of the liquor license. *TLK, Inc.*, 544 A.2d at 933; *Hotel Liquor License #H-2892 v. Tabs Entertainment, Inc.*, 125 A.3d 487, 490 (Pa. Cmwlth. 2015); *I.B.P.O.E. of West Mount Vernon Lodge 151 v. Pennsylvania Liquor Control Board*, 969 A.2d 642 (Pa. Cmwlth. 2009); *Pennsylvania Liquor Control Board v. Bartosh*, 730 A.2d 1029, 1033 (Pa. Cmwlth. 1999). "[W]hen it is determined that a licensee did not but should have known of covert illegal activities by an employee or patron, the case is likely to involve a discernible pattern of illegal activity." *TLK, Inc.*, 544 A.2d at 933.

Here, the trial court found that substantial evidence supported the nonrenewal. Licensee accrued 9 citations for 15 violations of the Liquor Code. Notably, Licensee was charged with 6 separate counts for failing to operate as a *bona*

15

*fide* "restaurant" over the course of its operation in violation of Section 102 of the Liquor Code, 47 P.S. §1-102, because it had insufficient food items and seating. *See* R.R. at 284a-341a (Bureau Exhibit B3). As recently as March 6, 2018, the Bureau cited Licensee for violating Section 102 of the Liquor Code following a January 8, 2018 inspection, which resulted in an immediate temporary suspension. *Id.* at 285a, 343a (Bureau Exhibit B4). According to the citation adjudication, Licensee was found to have three expired packs of frozen hamburger patties that had expiration years of 2001, 2008, and 2009 and no tables or chairs in the serving areas. *Id.* This citation was issued just six months after Licensee was cited for the same violation and failing to have a health certificate. *Id.* at 289a. Licensee's citation history alone supports the nonrenewal of the license.

In addition, the record contains substantial evidence that between January 2016, and May 2018, there were more than 81 police incidents at or immediately near the licensed premises — 28 of these incidents involved illegal drug activity and 52 incidents involved alcohol-related offenses. Even if we were to exclude police reports that were prepared before Captain Stanford assumed his current rank, there is still more than enough evidence supporting the trial court's determination to sustain the nonrenewal of Licensee's license. *See Hyland Enterprises, Inc.*, 631 A.2d at 791. Even accepting Licensee's position that its Shareholders were not informed of and had no knowledge of the covert drug activity taking place in or around licensed premises, most of the police reports were issued for persons openly drinking alcoholic beverages outside of the licensed premises, which was well within Shareholder's purview. Licensee's pattern of violations is well supported by substantial evidence.

16

## C. Licensee's Remedial Evidence

Next, Licensee contends that the trial court failed to properly consider Licensee's evidence presented at the *de novo* hearing. Licensee's evidence included expert and character witnesses regarding security measures and remedial efforts that were undertaken. Licensee argues that such evidence constitutes substantial steps to remediate the violations and should not have been disregarded.

In determining whether to renew a license on appeal, the trial court is permitted to consider substantial steps taken by a licensee to remediate the violations. *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board*, 909 A.2d 24 (Pa. Cmwlth. 2006); *see* 47 P.S. §4-470(a.1)(4). A licensee is not required to "do everything possible to prevent criminal activity on the premises, act as [its] own police force, or close [its] business." *Rosing, Inc. v. Pennsylvania Liquor Control Board,* 690 A.2d 758, 762-63 (Pa. Cmwlth. 1997). It is only required to take "substantial affirmative measures to prevent the misconduct." *Id.* at 763. "Remedial measures must be taken at a time when the licensed establishment knows or should know that illicit activity is occurring on the premises." *I.B.P.O.E.*, 969 A.2d at 649.

As to what steps a licensee may take to meet its burden, the steps taken by the licensee in *Rosing* are instructive:

> The [o]wners here took substantial affirmative measures because they made a zealous effort and incurred a financial burden to prevent drug-related activities on the premises while maintaining a reasonable zone of safety for themselves and their personnel. They installed exterior spotlights which were kept on all night. They hired a doorman to patrol the entrance, assess the patrons, and use a metal detector to inspect for weapons. They subsequently hired an armed security guard to assist. The [o]wners kept all entrances locked and recently installed a buzzer on the front entrance. The [o]wners disseminated letters to patrons indicating that suspicious or non-

17

> spending patrons would be removed. Finally, the ownership posted signs inside and outside the premises prohibiting the sale of drugs anywhere near the premises.

690 A.2d at 762.

In conducting *de novo* review, "[t]he trial court must receive the record of the proceedings before the [PLCB], if it is offered, and is permitted to take additional evidence." *Hotel Liquor License #H-2892*, 125 A.3d at 490. "As the ultimate fact-finder, the trial court is empowered to determine the weight and credibility of the evidence, resolve conflicts in the evidence, and is free to reject even uncontradicted testimony." *Id.*; *accord Bureau of Liquor Control Enforcement v. Big D. Restaurants, LLC*, 149 A.3d 890, 898 n.12 (Pa. Cmwlth. 2016).

However, the trial court may not capriciously disregard competent evidence. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). "[R]eview for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Id.* Where substantial evidence supports the findings of fact, and the findings of fact support the conclusions of law, "it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Id.* at 488 n.14. "[T]his Court has found an abuse of discretion where a trial court ignored 'substantial, uncontradicted evidence in the record, and the strong inferences drawn from it . . . .'" *Philly International Bar, Inc. v. Pennsylvania Liquor Control Board*, 973 A.2d 1, 3 (Pa. Cmwlth. 2008) (quoting *Pennsylvania Department of Transportation v. Mazzarini*, 919 A.2d 295, 302 (Pa. Cmwlth. 2007)).

Contrary to Licensee's assertions, the trial court did not disregard Licensee's remedial evidence, but considered and weighed all of the evidence that was presented. The trial court considered the record created at the administrative

18

hearing and the additional testimony offered by Licensee at the *de novo* hearing. With regard to the latter, the trial court found that two of the three witnesses "presented the same exact testimony before the trial court as what was presented before the PLCB." Trial Court Opinion, at 7. In addition, the trial court found that the testimony offered by Licensee's third witness, Hyon Yong, did not contribute to Licensee's case or otherwise convince the trial court to reverse the PLCB. *Id.* Ultimately, the trial court found that the new evidence offered "did not materially add" to Licensee's case. *Id.*

By arguing that the trial court ignored Licensee's evidence, Licensee is asking this Court to reweigh the evidence and substitute our credibility findings for that of the trial court. Our role is not to reweigh the evidence or determine the credibility of witnesses, but to determine whether, upon consideration of the evidence as a whole, the trial court's findings have the requisite measure of support in the record. *See Hotel Liquor License #H-2892*, 125 A.3d at 490. Upon review, we will not accede to Licensee's request and conclude that the trial court did not disregard evidence or otherwise abuse its discretion in this regard.

### D. Due Process

Lastly, Licensee contends that the PLCB's nonrenewal process violated Licensee's due process rights by unlawfully commingling prosecutorial, legislative, and adjudicative functions. Licensee argues that the PLCB commingled these functions in violation of our Supreme Court's seminal decision in *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa.1992). Licensee highlights that the PLCB and its counsel presided over the administrative hearing and selected a PLCB hearing examiner, who ruled in favor of PLCB's counsel's objections and against Licensee,

19

improperly admitted and considered evidence to sustain its own objections to the renewal of Licensee's liquor license, and tainted the hearing record against Licensee by allowing the trial court to consider this evidence.

The fundamental requirements of procedural due process are "adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013). "[T]he right to due process is as equally applicable to administrative agencies as it is to judicial proceedings . . . ." *Higgins v. Public School Employes' Retirement System*, 736 A.2d 745, 753 (Pa. Cmwlth. 1999); *see Erie Sports Bar, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 6 A.3d 663, 668 (Pa. Cmwlth. 2010).

In *Lyness*, our Supreme Court addressed similar due process concerns in the context of a physician whose license to practice medicine was revoked. Therein, three members of the State Board of Medicine voted both to institute formal proceedings against the physician and, following a hearing, to permanently revoke his medical license. 605 A.2d at 1206. Our Supreme Court held that this "commingling [of] prosecutorial and adjudicatory functions[,]" "where the very entity or individuals involved in the decision to prosecute are 'significantly involved' in the adjudicatory phase of the proceedings," constitutes a due process violation. *Id.* at 1207, 1210. Our Supreme Court opined that "a fair and impartial tribunal in the first instance is a cornerstone of our notion of due process." *Id.* at 1210 n.12. The Court noted that the defect could be cured by placing prosecutorial functions in a group of individuals or entity distinct from the State Board of Medicine, which renders the ultimate adjudication. *Id.* at 1209. "[I]f more than one

20

function is reposed in a single administrative entity, walls of division [need to] be constructed which eliminate the threat or appearance of bias." *Id.*

However, *Lyness* is readily distinguishable from the present case because there is no suggestion in the record that members of the Bureau, which acted as the prosecutor under Section 470(a.1) of the Liquor Code, 47 P.S. §4-470(a.1), were also members of the PLCB, which acted as the adjudicator under Section 464 of the Liquor Code, 47 P.S. §4-464. Licensee is unable to identify any specific evidence of record that such safeguards were either insufficient or were not maintained in this particular case. Furthermore, any due process violation or other defect in the administrative proceedings was sufficiently cured by the *de novo* hearing before a trial court, at which Licensee presented evidence and mounted a vigorous challenge to the nonrenewal. *See Phillips v. Department of Transportation, Bureau of Driver Licensing*, 80 A.3d 561, 569 (Pa. Cmwlth. 2013). Accordingly, we conclude that Licensee's due process rights were not violated.

## IV. Conclusion

Upon review, we affirm the trial court order upholding the PLCB's license nonrenewal.

_____
MICHAEL H. WOJCIK, Judge

Judge Dumas did not participate in the decision of this case.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yongs Place, Inc.,                        :
                                          :
                    Appellant             :
                                          :
            v.                            :  No. 483 C.D. 2021
                                          :
Pennsylvania Liquor                       :
Control Board                             :

**O R D E R**

AND NOW, this 12<u>th</u> day of <u>May</u>, 2023, the order of the Court of Common Pleas of Philadelphia County, dated March 17, 2021, is AFFIRMED.

 

_____
MICHAEL H. WOJCIK, Judge