550 A.2d 838

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Donald J. Slipp and Donald Buick Pontiac, Inc., Appellees.

Submitted on briefs May 3, 1988, to Judges DOYLE and MCGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*Donald H. Poorman,* Assistant Counsel, with him, *Harold H. Cramer,* Assistant Counsel, and *John L. Heaton,* Chief Counsel, for appellant.

*Gary Kleitman, Kleitman, Pincus & Haskins,* for appellee.

OPINION BY JUDGE MCGINLEY, November 21, 1988:

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT), appeals an order of the Court of Common Pleas of Montgomery County (trial court) which sustained the appeal of Donald J.

Slipp and Donald Buick Pontiac, Inc. (Slipp) and set aside the three month suspension of Slipp's certificate of appointment as an official emission inspection station.

On March 18, 1986, Slipp was approved and licensed by DOT to perform emission inspections. As a result of a departmental hearing held on June 18, 1986, DOT notified Slipp on August 5, 1986, that Slipp's certificate of appointment was suspended for three months for improper record keeping pursuant to 67 Pa. Code §177.38(a). Slipp appealed this action to the trial court and a hearing was held on January 5, 1987. At hearing, William T. Mohr (Mohr), a Field Investigator for DOT, testified that on April 7, 1986, he performed an audit of Slipp's inspection station and found that seventeen computer print-outs out of 525 print-outs documenting the results of emission testing were missing and one was improperly recorded. (It contained a handwritten entry on the print-out by Slipp's mechanic, Screnci.) (Notes of Testimony, January 5, 1987, (N.T.) at 14-15, 28.) Upon cross-examination, Mohr testified that the information on the print-outs is also stored on a computer cartridge and that every three months the cartridge is changed and kept by DOT as a record of the inspections performed. (N.T. at 22-23.)

The trial court concluded that DOT had not shown any requirement that Slipp keep the computer print-outs on hand, particularly in light of the fact that DOT maintained the same information on computer cartridges. (Opinion of the Court of Common Pleas of Montgomery County, July 9, 1987, at 4-5.) The trial court also ruled that the suspension was improper because DOT had not specifically defined "improper record keeping" and did not prove that it had supplied Slipp with a copy of the official emission inspection station regulations.

DOT argues that its regulations require that emission inspection stations keep print-outs of emission tests *at the station* for a period of two years; that the absence of seventeen computer print-outs constitutes "improper record keeping" under the regulations and case law; and that there is no requirement that DOT supply Slipp with a copy of its regulations and even if there was, it was never established that Slipp had failed to receive a copy.

Slipp argues that it is not required to keep *print-outs* at the station; that this was not "improper record keeping" because the computer cartridge containing the information is retained by DOT and regulations do not define "improper record keeping;" and that DOT is required to supply every emission inspection station with a copy of its regulations and failed to prove that it did so.

Our scope of review is limited to determining whether there has been an error of law and whether the findings of fact are supported by substantial evidence. *Department of Transportation v. Sortino*, 75 Pa. Commonwealth Ct. 541, 462 A.2d 925 (1983). Where a trial court makes new findings of fact *and* conclusions of law, it may modify a DOT penalty. *Department of Transportation, Bureau of Driver Licensing v. Cappo*, 106 Pa. Commonwealth Ct. 481, 527 A.2d 190 (1987); *Kenworth Trucks Philadelphia, Inc. v. Department of Transportation, Bureau of Traffic Safety*, 56 Pa. Commonwealth Ct. 352, 425 A.2d 49 (1981). Where, in an inspection license suspension case, the trial court makes new findings of fact but reaches the same legal conclusions as DOT, it may not alter the DOT penalty. *Commonwealth v. Lossie*, 96 Pa. Commonwealth Ct. 553, 507 A.2d 1312 (1986). On the other hand, if the court reaches a conclusion of law different from that

reached by DOT, it clearly has the authority to modify or correct the penalty imposed by DOT. *Department of Transportation, Bureau of Traffic Safety v. Antram,* 48 Pa. Commonwealth Ct. 135, 409 A.2d 492 (1979). Having reached different conclusions of law the trial court was justified in modifying the penalty imposed by DOT.

The trial court concluded that 67 Pa. Code §177.38 contains no requirement that all computer print-outs be retained at the inspection station. DOT relies on subsection (a) of that section which provides: *"Personal Liability.* It shall be the responsibility of the owner of an emission inspection station: . . . (4) To keep for a period of 2 years, current emission inspection records at the station for examination by the inspection station investigator or other authorized persons." DOT argues that 67 Pa. Code §177.38(a)(4) mandates that Slipp was required to keep the computer print-outs at the station for a period of two years because they constitute "emission inspection records."

Slipp argues that although the print-outs are the results of the emission testing, there are other records which would reflect that the vehicle has passed or failed the emission test. The regulations designate what records must be kept and do not mention receipts. No regulation specifically requires that stations keep print-outs of emission inspections at the station for two years.

As a car is being tested on the analyzer two print-outs are produced by the analyzer indicating whether or not the vehicle has passed or failed. One print-out is given to the consumer whose vehicle is being inspected and the other is retained at the station. (N.T. at 14.) These print-outs are also stored in a computer cartridge which is removed every three months from each station and forwarded to and retained by DOT. (N.T. at 22-23.)

This procedure is required under 67 Pa. Code §§177.35(d)[1] and (e).

We agree with the trial court's interpretation of the subject regulations and its practical resolution of the issue at the time this appeal was before the trial court in July, 1987. The regulations went unchanged from March 18, 1986, the date Slipp was licensed through the time the audit was performed in April, 1986, until Slipp's appeal was before the trial court in July, 1987. However, on March 4, 1988, 67 Pa. Code §177.38 was amended. Subsection (a)(14) was added to 67 Pa. Code §177.38 and now stations must maintain the second copy of the consumer report (analyzer tape print-out) at the station for inspection for a period of two years.[2]

---

[1] 67 Pa. Code §177.35(d)(1)(v) provides that manufacturers and distributors shall provide the following service commitments:

. . . (v) Visit each station at least every 3 months, no less than 80 calendar days and no greater than 95 calendar days from the previous inspection—or in the case of the initial visit from the delivery date of the analyzer—to calibrate the analyzer in accordance with Bureau procedures and the requirements of subsections (c) and (d) and collect the data from tests stored in the analyzer. For example, if the analyzer installation and initial calibration were performed on June 18, 1984, the next calibration for this analyzer would be required between September 6 and September 21.

[2] 67 Pa. Code §177.38(a)(14) provides that it shall be the responsibility of the owner of an emission inspection station:

[t]o maintain the second copy of the consumer report (analyzer tape print-out) at the station and hold available for inspection for a period of 2 years. Consumer reports shall be kept in sticker number order. Data entry errors or voided stickers shall be noted legibly on the back side of the consumer report.

(i) *Data entry errors*. If a data entry error occurs, the error and the error correction shall be clearly noted.

(ii) *Voided stickers*. If it is necessary to void a sticker, the sticker number and the reason shall be clearly noted.

DOT argues that the computer cartridge cannot satisfy the regulation's requirement of an accessible on-site, two-year record of an emission testing. Nowhere in the regulations did it expressly state that a duplicate computer print-out for each test on the analyzer must be kept in the station for two years until subsection (a)(14) was added in March of 1988. DOT has access to the computer cartridge and could easily have audited Slipp's records.[3]

DOT argues that the absence of seventeen emission inspection print-outs constitutes "improper record keeping" under the regulations. DOT cites *Cappo* wherein this Court stated:

> While the terms 'improper' and 'careless' are not defined by statute, by DOT regulations, or by case law, it is clear that these violations do not include elements of fraud or deceit, for these latter are elements of the separate charge of fraudulent record keeping. Sortino. . . . We must, therefore, construe these terms according to their common and approved usage. Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903. 'Improper' is defined as 'not accordant with fact, truth, or right procedure,' i.e., incorrect, inaccurate.

*Id.* at 486, 527 A.2d at 192-193.

Under the definition employed in *Cappo* the alleged violations in the case *sub judice,* do not constitute "improper record keeping." Just because these records were not at the station does not mean that Slipp's records are incorrect or inaccurate. Slipp acted in accordance with DOT regulations at that time.

---

[3] Testimony indicates that the print-outs alleged to have been missing were missing as of November 1985. The audit at issue was performed in April of 1986. (N.T. at 23.) The computer cartridge would have certainly been helpful in DOT's audit of Slipp's station.

The trial court found that the other basis for suspension, the alleged handwritten entry on one computer print-out, did not warrant a three month suspension. Testimony indicates that the sticker number was written in by hand and there was no explanation of the reason why. Testimony also indicates that the vehicle in question had passed inspection according to the corresponding computer print-out. (N.T. at 18.) The trial court found that this was a *de minimis* infraction.[4] This conclusion is supported by substantial evidence.

Finally, Slipp argues that DOT is required by regulation to supply the inspection station with a copy of the regulations. DOT's witness, Mohr, testified that he had no signed receipt showing that the regulations had been supplied. (N.T. at 24-25.) However, 67 Pa. Code §177.38(a)(2) provides that it is the responsibility of the owner of an emission inspection station "[t]o make official emission inspection regulations and supplements available for the use of all emission mechanics and other employes involved." The trial court erroneously interpreted the testimony of DOT's witness as a requirement that regulations must be supplied to emission inspection stations by DOT. But because of our resolution of the first two issues, this error does not warrant a reversal.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 21st day of November, 1988, the order of the Court of Common Pleas of Montgomery County, dated July 9, 1987, at No. 86-11846, is hereby affirmed.

Judge MACPHAIL did not participate in the decision in this case.

---

[4] 67 Pa. Code §177.38(a)(14)(i), enacted in March 1988, provides for data entry errors: "If a data entry error occurs, the error and the error correction shall be clearly noted."