**FAIRFIELD
FORD/VW/HYUNDAI/MITSUBISHI**

v.

**COMMONWEALTH of Pennsylvania,
DEPARTMENT OF TRANSPORTA-
TION, BUREAU OF MOTOR VEHI-
CLES, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 31, 2003.
Decided May 8, 2003.
Publication Ordered May 9, 2003.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

Barbara A. Darkes, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY JUDGE FRIEDMAN.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (DOT) appeals from the April 23, 2002, order of the Court of Common Pleas of Lycoming County (trial court), which was filed on April 26, 2002. The order vacated DOT's two-month suspension of Fairfield Ford/VW/Hyundai/Mitsubishi's (Fairfield) official inspection station certificate; DOT imposed the suspension on Fairfield for "improper record keeping"[1] in 2001. The order also vacated DOT's warnings to Fairfield for "careless record keeping" in 1999 and 2000. Finally, the order directed DOT to warn Fairfield about "careless record keeping" in 2001.[2] We affirm the order.

DOT audited Fairfield's inspection records in 1999, 2000 and 2001. (Trial court op. at 3–4.) The 1999 audit involved 4,847 inspections. The auditor found that one MV–480 sheet, a form used to record motorcycle and trailer inspections, was missing. As a result, on June 28, 1999, DOT issued Fairfield a warning for "careless record keeping." (Trial court op. at 3; R.R. at 77a.) The 2000 audit involved 5,073 inspections. The auditor found that Fairfield recorded expired insurance dates for twelve inspections and omitted required information for six inspections. As a result, on August 25, 2000, DOT issued Fairfield a warning for "careless record keeping." (Trial court op. at 3; R.R. at 75a.)

The 2001 audit involved 5,500 inspections. The auditor found four types of discrepancies on the MV–431 form:[3] (1) eighteen inspection records contained expired insurance dates; (2) two inspection records did not contain the "registration number" and the "year/make/body"; (3) three inspection records lacked the "VID [vehicle identification] number"; and (4) four MV–431 yellow sheets were missing, representing forty inspections. With re-

---

1. DOT's regulation at 67 Pa.Code § 175.51(a)(2)(ii) states that "improper record keeping" is cause for a suspension; the penalty for a first offense is a two-month suspension.

2. The regulation at 67 Pa.Code § 175.51(a)(2)(viii) states that "careless record keeping" is cause for suspension; however, the penalty for a first offense is a warning.

3. The MV–431 is a form used to record motor vehicle inspections. It measures approximately 11″ × 14″ and has enough space to record ten inspections. For each inspection, the station must fill out two lines consisting of fifteen information blocks and fifteen check-off boxes. The first line contains information blocks for: (1) the inspection number; (2) the date; (3) the registrant's name; (4) the ad-

dress; (5) the vehicle identification number; (6) the old odometer number; and (7) the sticker number. The second line contains information blocks for: (8) the work order number/signature; (9) the insurance company name; (10) the expiration date; (11) the policy number; (12) the registration number; (13) the year/make/body; (14) the current odometer number; and (15) the total cost plus tax. The fifteen check-off boxes are labeled: (1) registration verified; (2) tires, wheels; (3) steering suspension; (4) exhaust system; (5) fuel system; (6) glazing and mirrors; (7) lights, wiring and switches; (8) body doors and latches; (9) brake system; (10) left front; (11) left rear; (12) right front; (13) right rear; (14) other; and (15) road test. (Trial court op. at 4–5.)

spect to the last problem, Fairfield had forty work orders showing that Fairfield had performed the inspections; however, nine of the work orders lacked complete insurance information. (Trial court op. at 2.) As a result, DOT notified Fairfield that Fairfield's errors constituted both "improper record keeping" and the lesser-included offense of "careless record keeping." Following a hearing, DOT issued an order, dated December 13, 2001, suspending Fairfield's official inspection station certificate for two months. (Trial court op. at 1, 3.)

Fairfield filed an appeal with the trial court, which held a *de novo* hearing on the matter. The evidence presented established that, with respect to the expired insurance dates, Fairfield had recorded the wrong year on the inspection sheet. Thus, for example, instead of an expiration date of 6–01–02, Fairfield had recorded 6–01–01. (Trial court op. at 5.) As for the incomplete "registration number" and "year/make/body" blocks, Fairfield had recorded the information on its work orders but simply failed to transfer the information to the forms. After the audit, Fairfield provided the missing information on the forms. (Trial court op. at 6.) Fairfield also had recorded the missing "VID numbers" on its work orders; thus, after the audit, Fairfield was able to enter them on the forms. (Trial court op. at 6.) Finally, Fairfield had mailed the four missing MV–431 yellow sheets to DOT by mistake.[4] Fairfield inquired about recovering the sheets from DOT, but the auditor told

Fairfield that DOT does not keep the MV–431's very long and has probably destroyed them. DOT confirmed that the sheets were not available. Fairfield's work orders demonstrated that the inspections recorded on the missing sheets were done properly. (Trial court op. at 6–7.)

The initial question before the trial court was whether Fairfield's errors constituted "improper record keeping" or "careless record keeping." Relying on *Department of Transportation, Bureau of Driver Licensing v. Cappo,* 106 Pa.Cmwlth. 481, 527 A.2d 190 (1987), and *Department of Transportation, Bureau of Motor Vehicles v. Tutt,* 133 Pa.Cmwlth. 537, 576 A.2d 1186 (1990), the trial court stated that "careless record keeping" occurs when the station's inaccuracies in record keeping are inadvertent, i.e., the result of neglect, inattentiveness or not taking ordinary and proper care. The trial court then reasoned that, because "careless record keeping" is a lesser-included offense of "improper record keeping," the latter offense occurs when the station's inaccuracies in record keeping are the result of: (1) a gross deviation from ordinary care; (2) recklessness; or (3) intent, but not the intent to defraud.[5] (Trial court op. at 10–11.)

The trial court considered that, in performing 5,500 inspections, Fairfield had to fill in 82,500 blocks of information, which means that Fairfield's twenty-three copying errors (eighteen miscopied dates plus five missing numbers) constituted an error rate of .00028%.[6] The trial court then con-

---

4. The MV–431 consists of an original white copy and a duplicate yellow copy. Although the form's instructions state that the inspection station is to mail the completed *original* to DOT, the yellow copy contains a notice stating that the "completed forms" should be mailed to DOT. (Trial court op. at 15.)

5. DOT's regulations also prohibit "fraudulent record keeping," which is not at issue here. *See* 67 Pa.Code § 175.51(a)(2)(i).

6. We note that the actual error rate, expressed as a percentage, is .028%, which represents one copying error for every 3,587 entries.

sidered that, despite the exercise of ordinary care in preparing its own decisions, an auditor might find twenty-three errors of typing, grammar or spelling in any 82,500 words of the trial court's opinions. The trial court stated that DOT's regulations do *not* require *perfect* record keeping and found that Fairfield's twenty-three copying errors did *not* rise to the level of "careless record keeping." (Trial court op. at 14.)

With respect to Fairfield's mailing of four yellow sheets to DOT, however, the trial court found that the mistake *did* constitute "careless record keeping." (Trial court op. at 15–18.) In this regard, the trial court recognized that inspection stations are required to retain the yellow sheet for two years. However, the trial court considered the fact that the yellow sheet itself contains no indication whatsoever that it is to be retained by the inspection station. In fact, the yellow sheet actually contains a boldly printed notice, in capital letters within an outlined block, instructing the station to mail the completed form to DOT. The trial court also was disturbed by the fact that DOT, knowing that inspection stations are to retain the yellow sheets, did not return them out of courtesy to Fairfield. Finally, the trial court stated that, if it could, it would dismiss the case because Fairfield's mistake was *de minimis*.[7]

Having determined that, in 2001, Fairfield violated the regulation against "careless record keeping," the trial court needed to determine the appropriate penalty. For a first offense, the penalty is a warning; for a second offense, the penalty is a four-month suspension; and for a third offense, the penalty is a six-month suspension. 67 Pa.Code § 175.51(a)(2)(viii). The trial court recognized that DOT had given Fairfield two prior warnings for "careless record keeping." However, Fairfield had no opportunity to challenge the 1999 and 2000 warnings;[8] therefore, to ensure that Fairfield received due process, the trial court examined whether the prior warnings for "careless record keeping" were proper. (Trial court op. at 19–20.)

In 1999, DOT issued a warning for "careless record keeping" because one sheet of inspections was missing for the 4,847 inspections performed.[9] The trial court found that, absent a reason from DOT to explain why the sheet was missing, this one error did not amount to "careless record keeping."[10] In 2000, DOT issued its warning because of eighteen errors in the information blocks for 5,073 inspections. The trial court found that, considering the amount of information that Fairfield copied in performing 5,073 inspections, the eighteen copying errors did not constitute "careless record keeping." (Trial court op. at 20–21.)

**7.** The trial court explained that, if DOT does not keep the MV–431 originals, the missing yellow copies could not be very important.

**8.** We note that DOT did not impose a suspension on Fairfield after the second warning in 2000. Thus, the trial court concluded that DOT is estopped from seeking more than a four month suspension for a second warning. (Trial court op. at 22–23.)

**9.** The trial court noted that DOT did *not* base the warning on other errors, such as an erroneous odometer reading, twelve incorrect insurance expiration dates and approximately eight other inaccurate entries. (Trial court op. at 20.)

**10.** *Cf. Department of Transportation, Bureau of Traffic Safety v. Slipp*, 121 Pa.Cmwlth. 230, 550 A.2d 838 (1988) (holding that seventeen missing records does not constitute "improper record keeping" because the fact that the records are not at the station does not mean that the records are incorrect or inaccurate).

■ Having made its determinations, the trial court vacated the two-month suspension for "improper record keeping" in 2001, vacated the warnings for "careless record keeping" in 1999 and 2000 and directed DOT to issue a warning for "careless record keeping" in 2001. DOT now appeals to this court.[11]

■ DOT argues that the trial court erred in finding that Fairfield was guilty only of "careless record keeping" in 2001. DOT maintains that Fairfield's errors in 2001 constitute "improper record keeping" because, despite the warnings in 1999 and 2000, Fairfield's owner and managers did not correct Fairfield's procedures to prevent further discrepancies in 2001. We disagree.

■ The terms "improper" and "careless" are not defined by statute or regulation. *Cappo.* Therefore, we must construe the terms according to their common and approved usage. *Id.* The word "improper" means "not accordant with fact, truth, or right procedure," and the word "careless" means "not taking ordinary or proper care." *Id.* at 193.

> [C]areless recordkeeping is a lesser included offense of *improper* recordkeeping. Inaccuracies and incorrect information find their way into records because of *incorrect methods, procedures, and practices* in their keeping. That the inaccuracies exist is sufficient proof to find liability. A showing of inadvertence, however, lowers the presence of the inaccuracy to *careless* recordkeeping and requires that a standard of *ordinary and proper care* be applied when determining whether

negligence has resulted in the inaccuracy.

*Tutt,* 576 A.2d at 1189 (emphasis added). We interpret this language to mean that, if inaccuracies exist and they are the result of following incorrect record-keeping procedures, then the record keeping is "improper." However, if inaccuracies exist and they are the result of failing to take ordinary care while following proper record-keeping procedures, then the record keeping is "careless."

To reiterate, DOT's argument is that Fairfield's record keeping was "improper" because Fairfield did not correct its procedures after receiving warnings in 1999 and 2000. The proper record-keeping procedures are set forth at 67 Pa.Code § 175.42 as follows. The certified mechanic who performed the inspection signs the MV–431 or MV–480 form following the inspection. 67 Pa.Code § 175.42(b). The certified mechanic, or another person, then transfers the inspection information from the work order to the appropriate form. 67 Pa.Code § 175.42(b)(1). The form must be neat and legible and completed in its entirety. 67 Pa.Code § 175.42(d). The station maintains the form in duplicate, and, upon completion of the entire sheet, forwards the original copy to DOT. 67 Pa.Code § 175.42(c). The station retains the duplicate copy for two years as a garage record. 67 Pa.Code § 175.42(c).

Here, there is no question that Fairfield followed these procedures in 1999, 2000 and 2001. Indeed, Fairfield recorded thousands of inspections each year in compliance with these procedures. The fact that Fairfield made errors does not mean that Fairfield's record-keeping procedures

---

11. Our scope of review in an inspection certificate suspension case is limited to a determination of whether an error of law was committed or whether the findings of the trial court are supported by substantial evidence.

*Fiore Auto Service v. Department of Transportation, Bureau of Motor Vehicles,* 735 A.2d 734 (Pa.Cmwlth.1998), *appeal denied,* 559 Pa. 681–82, 739 A.2d 545 (1999).

were "improper." Thus, we reject DOT's contention that Fairfield's errors in 2001 were the result of Fairfield's failure to follow proper record-keeping procedures and that Fairfield needed to correct its procedures after the warnings in 1999 and 2000.

■ We agree with the trial court that some of Fairfield's errors in 2001 resulted despite Fairfield's taking ordinary care while following proper record-keeping procedures. The exercise of ordinary care does not demand perfection.[12] A person exercising ordinary care in copying information from a work order to an inspection sheet will make some mistakes. Here, the miniscule error rate in 2001 supports the trial court's finding that Fairfield exercised ordinary care in copying information. Thus, the trial court did not err in concluding that the copying errors did not constitute "careless record keeping." As for Fairfield's sending four copies of the MV–431 form to DOT by mistake, however, we agree with the trial court that Fairfield did not exercise ordinary care. A reasonable person would have understood the instruction on the form to send the *original* to DOT. Thus, we will not disturb the trial court's determination that Fairfield was "careless" in sending the yellow sheets to DOT.

■ DOT also argues that the trial court erred in finding that the 1999 and 2000 warnings for "careless record keeping" were unwarranted.[13] We disagree. There was *one* missing sheet in 1999 for 4,847 inspections and eighteen copying errors in 2000 for 5,073 inspections. Although we recognize that Fairfield's record keeping was not perfect in 1999 and 2000, we will not disturb the trial court's finding that Fairfield made these mistakes while exercising ordinary care. A person exercising ordinary care might misplace one sheet out of the hundreds of sheets involved in almost 5,000 inspections, and a person exercising ordinary care might make eighteen copying errors in the course of performing more than 5,000 inspections.

Accordingly, we affirm.

## ORDER

AND NOW, this 8th day of May, 2003, the order of the Court of Common Pleas of Lycoming County, dated April 23, 2002, and filed April 26, 2002, is hereby affirmed.

President Judge COLINS dissents.

---

12. In negligence actions, the standard of care is reasonable care. *Stewart v. Motts*, 539 Pa. 596, 654 A.2d 535 (1995). The standard never varies, but reasonable care varies depending on the danger involved in the act; the greater the danger, the greater the care which must be exercised. *Id.* Here, the act of copying information from a work order to a form does not involve any danger; thus, the care required in copying information from a work order certainly is *not* perfection.

We recognize that, in *Tutt*, we stated that the existence of inaccuracies is sufficient proof to find liability. However, we explained that, where the inaccuracies are inadvertent, it is necessary to apply the standard of ordinary and proper care. *Tutt*. With respect to copying information from the work order to the inspection sheet, a person exercising ordinary care need not be perfect.

13. DOT agrees with the trial court that Fairfield was entitled to be heard at the *de novo* hearing with respect to the 1999 and 2000 warnings. (DOT's brief at 32.)