# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Syed Zaidi, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 996 C.D. 2023 |
| | : | No. 998 C.D. 2023 |
| Commonwealth of Pennsylvania, | : | ARGUED: September 9, 2024 |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles | : | |
| | | |
| Grady Walker, III, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 997 C.D. 2023 |
| | : | No. 999 C.D. 2023 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles | : | |
| | | |
| BJM Automotive, LLC, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1000 C.D. 2023 |
| | : | No. 1001 C.D. 2023 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  June 5, 2025**

BJM Automotive, LLC, Syed Zaidi, and Grady Walker, III (collectively, Appellants) appeal from the order of the Court of Common Pleas of Dauphin County denying their respective appeals of the Department of Transportation, Bureau of Motor Vehicles' (the Department) suspension of their privileges to conduct motor vehicle safety and emission inspections[1] and other penalties imposed. We affirm in part and reverse in part.

The penalties resulted from an audit conducted by a Quality Assurance Officer[2] (QAO) employed by Parsons, a private company that conducts audits of inspection stations for the Department. The audit was initiated when the QAO was given a spreadsheet which contained emission inspection information from the Department about 33 vehicles inspected by BJM from March 1 to March 21, 2021. The QAO investigated BJM's emission and safety records for these vehicles and found problems with the information entered into emission records for four of the vehicles, a 2000 Ford F-150 Truck, a 2012 Chevrolet Malibu, a 2012 Dodge, and a 2016 Ford, the former two inspected by Zaidi and the latter two inspected by Walker.

As a result of the investigation, the Department issued letters suspending BJM's certificate of appointment as a safety inspection station and certificate of appointment as an emission inspection station; and Walker and Zaidi's certifications as official safety inspectors and certifications as official emission inspectors (for each Appellant, referred to herein as safety inspection privileges and emission inspection privileges). With respect to their safety inspection privileges, Appellants were each suspended one year for fraudulent recordkeeping and two

---

[1] Appellants are all represented by the same counsel. The six captioned appeals concern the Department's action against each Appellant's safety inspection privilege and emission inspection privilege. The matters were consolidated by this Court.

[2] The trial court cites the QAO's testimony extensively and implicitly found it credible.

2

months for improperly assigning a certificate of inspection. The suspension terms were to run consecutively for total suspensions of one year and two months for each Appellant.

With respect to their emission inspection privileges, Appellants were each disciplined for faulty inspection of equipment or parts, fraudulent recordkeeping, and improperly assigning certificate of inspection. The Department imposed different sanctions upon Appellants based upon the different schedules of penalties for emission inspection stations, 67 Pa. Code § 177.602, and emission inspectors, 67 Pa. Code § 177.603. The Department issued the following sanctions to BJM: for faulty inspection of equipment and parts, a three-month suspension and $1,000 fine; for fraudulent recordkeeping, a one-year suspension and $2,500 fine; and for improperly assigning certificate of inspection, a one-month suspension. The Department issued the following sanctions to Zaidi and Walker: for faulty inspection of equipment and parts, a three-month suspension; for fraudulent recordkeeping, a one-year suspension; and for improperly assigning certificate of inspection, a warning. The suspension terms for each of Appellants' offenses were to run consecutively with each other, for total suspensions of one year and four months for BJM and one year and three months for Zaidi and Walker.

Appellants appealed the Department's disciplinary actions to the trial court. The trial court held a single hearing on all these matters and an unrelated set of safety privilege suspensions resulting from alleged violations by Appellants Walker and BJM involving the inspection of a 2007 GMC Canyon in October 2021.[3] The QAO, Zaidi, and Walker each testified at the hearing. The trial court issued an

_____

[3] Although the cases were not consolidated, the trial court issued a single order disposing of both the instant cases and the appeals involving the 2007 GMC Canyon. BJM's appeal in the 2007 GMC Canyon case was sustained and Walker's was denied by the trial court.

order denying the appeals with respect to the cases currently at issue and granting the appeals of BJM and Zaidi (but not Walker) with respect to the 2007 GMC Canyon matters. In the 2007 GMC Canyon matters, the appeals of BJM and Zaidi were not granted until after they had served the full suspension term of 14 months.

The instant appeal to this Court followed.[4] In its narrative recitation of the facts, the trial court found as follows. BJM is an official safety inspection station and official emission inspection station for the Department, and Zaidi is an official emission inspector employed by BJM.[5] Walker, an official safety inspector and official emission inspector, although not employed by BJM, uses its equipment and safety and emission inspection certificates when dealing with his own customers.

The QAO's testimony, which the trial court implicitly adopted as fact, was that under the procedures used in Pennsylvania's emission testing program, vehicles registered in certain counties of the Commonwealth are required to undergo emission testing. Of those counties for which emission testing is required, "visual" emission testing is required for vehicles registered in some counties, including Luzerne and Lycoming, and on-board diagnostic (OBD) emission testing is required for vehicles registered in others, including Dauphin.[6] (Trial Ct. Op. at 5.) Visual

---

[4] The trial court granted supersedeas in the instant appeals until resolution by this Court.

[5] Although suspended as a safety inspector, Zaidi testified that he is not one.

[6] This and the remainder of the QAO's testimony regarding requirements for emission testing represent a less technical and simplified description of the Department's emission inspection regulations. The Department's emission inspection regulations define "I/M region" (I/M refers to "Inspection/Maintenance"), to mean "[t]he designation and grouping of counties in the Commonwealth certified under [67 Pa. Code] § 177.51(d) (relating to program requirements for purposes of administration of emission inspection requirements)." 67 Pa. Code § 177.3. Currently, of the counties at issue, Dauphin is in the South Central Region and Luzerne and Lycoming are in the Northern Region. 33 Pa.B. 4864 (Sept. 27, 2003). In the South Central Region, vehicles 1996 and newer with a gross vehicle weight rating of 8,500 pounds and under are subject to, *inter alia*, **(Footnote continued on next page…)**

4

testing requires an inspector to check the gas cap of a vehicle (if a gas cap is used on the vehicle in question) for leaks and to visually check to ensure that the vehicle is equipped with certain components and that those components function. OBD testing requires an inspector to plug an electronic analyzer called an "OBD module" into the vehicle's on-board data link connector. (*Id*.) An OBD test is more sophisticated and accurate than a visual emission test, and more frequently triggers failing emission tests because it is more sensitive in detecting problems than a visual test.

The trial court heard testimony from both the QAO and Zaidi regarding the process used to verify a vehicle's county of registration before starting an emission inspection. The QAO testified that in the case of vehicles owned by private consumers, the registration card bears a barcode that emission inspectors can scan with their emission analyzer equipment to determine the appropriate county of registration; once the barcode is scanned, the equipment populates the vehicle's information (including county of registration) from a Department database. However, the equipment allows the inspector to manually make changes to that information if necessary. The QAO testified that for many vehicles owned by dealers, the registration paperwork lacks a barcode to scan for the necessary

what is referred to as an "OBD-I/M check." 67 Pa. Code § 177.51(f)(5). In the Northern Region, vehicles 1975 and newer are subject to, *inter alia*, visual inspection. 67 Pa. Code § 177.51(f)(6).

"OBD-I/M check" (what the QAO referred to as OBD testing) refers to "[a]n inspection and evaluation of a vehicle's emission control systems utilizing the vehicle's OBD system as provided in [67 Pa. Code] § 177.203 (relating to test procedures) and [67 Pa. Code] § 177.204." 67 Pa. Code § 177.3. Test procedures for OBD-I/M checks are set forth at 67 Pa. Code § 177.203. Visual testing is functionally defined by "[v]isual inspection procedures" set forth at 67 Pa. Code § 177.203(d).

A gas cap test is also required in both the South Central and Northern Regions for vehicles of the types at issue here. *See* 67 Pa. Code § 177.51(f)(5)-(6).

5

information. Therefore, for such vehicles, inspectors can only rely upon what is written on registration documentation or what the dealership tells them.

Zaidi testified that sometimes when he scans a barcode on a registration card, the analyzing equipment will populate the wrong county of registration or will not show a county at all. Therefore, Zaidi testified that he checks what is written on the registration paperwork provided by the customer. According to Zaidi, sometimes the county on the paperwork does not match the information populated in the analyzer. In those instances, he will go by the county listed in writing rather than the information populated from the Department database. Zaidi could not state whether the analyzer showed the wrong county in those instances when Walker performed the emission inspections because he does not supervise Walker.

The trial court found that for the two vehicles which Walker inspected and for which he assigned both safety and emission certificates of inspection, the 2000 Ford F-150 and 2012 Chevrolet Malibu, the barcode scanned by the analyzer resulted in the input of the correct county of registration as Dauphin, which would require an OBD test, but it was changed manually by Walker to Lycoming, allowing the use of a visual test. The difference in emission testing between Dauphin and Lycoming might have affected whether the vehicles passed or failed an emission inspection. The trial court made no findings concerning the safety inspection records for the vehicles inspected by Walker.

The two vehicles inspected by Zaidi, the 2012 Dodge and the 2016 Ford, were inspected under "dealer tags," meaning that the vehicles were owned by a car dealership when inspected. (Trial Ct. Op. at 7.) The registrations provided by the dealership listed the county of registration as Luzerne, and Zaidi issued an emission certificate of inspection listing Luzerne as the county of registration. However, Department records showed that the vehicle was registered to a dealer in

6

Lycoming County. Visual inspection is required for both counties. The trial court again made no findings concerning the records of the safety inspections for those vehicles.[7]

On appeal, Appellants raise the following issues:

[(1)] Whether the . . . [t]rial [c]ourt erred by upholding the [e]mission[] and [s]afety [i]nspection suspensions of BJM, Walker[,] and Zaidi for fraudulent record[]keeping and performing faulty inspections despite [the Department's] failure to sufficiently prove the allegedly correct registration counties of the vehicles involved.

. . . .

[(2)] Whether the . . . [t]rial [c]ourt erred by upholding the [e]mission[] [i]nspection suspensions of BJM, Walker[,] and Zaidi for performing [f]aulty [i]nspections despite the fact that [the Department] did not prove that the outcome of the inspections would have been different under the alleged proper procedure as required by [Section 177.601 of the emission inspection regulations, 67 Pa. Code] § 177.601 . . . .

. . . .

[(3)] Whether the . . . [t]rial [c]ourt erred by upholding the [e]mission[] and [s]afety [i]nspection suspensions of BJM, Walker[,] and Zaidi for [i]mproperly [a]ssigning a [c]ertificate of [i]nspection where [the Department] did not sufficiently prove that the inspections were not properly conducted.

. . . .

---

[7] The QAO also testified, and the trial court found, that a safety inspection cannot be performed before passing the emission test. (Notes of Testimony "N.T." at 88, Reproduced R. "R.R." at 80a; Trial Ct. Op. at 5.) However, as discussed *infra*, the regulations are silent on the *performance* of a safety inspection, without affixing a certificate of inspection, prior to issuance of an emission certificate of inspection.

[(4)] Whether the . . . [t]rial [c]ourt erred by failing to apply the full suspension time served by BJM in the [2007 GMC Canyon case], in which the suspension appeal was granted, to any penalties in the remaining cases in which suspensions were upheld.

(Appellants' Br. at 4.)  In their argument, Appellants briefly raise a fifth issue not separately listed or captioned: "While BJM may not be liable for [f]raudulent [r]ecordkeeping, it may be liable for one of the lesser included offenses."[8]  (*Id.* at 39.)

**Fraudulent Recordkeeping**

Appellants argue that the Department failed to prove fraudulent recordkeeping with respect to both the safety and emission inspection suspensions.[9] While we agree with the Department that Appellants' argument based upon the best evidence rule has been waived,[10] we nevertheless believe that the trial court erred

---

[8] By failing to list this issue separately, and failing to break it into a separate part of its argument, Appellants' brief leaves something to be desired in terms of compliance with Pennsylvania Rules of Appellate Procedure 2116(a), Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail.") and 2119(a), Pa. R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein . . . ."). The Department does not respond to this argument. Nevertheless, we exercise our discretion and address this question, to the degree it is relevant for Walker and BJM (we conclude elsewhere that Appellants did not commit fraudulent recordkeeping with respect to safety inspections and Zaidi is not liable for fraudulent recordkeeping with regard to the emission inspections he performed).

[9] Appellants assert the same arguments with respect to the faulty inspection (emission) violations. As we deal with these violations separately, *infra*, we do not discuss them here.

[10] Appellants argue that the Department did not provide sufficient evidence of the correct county of registration for the relevant vehicles in order to prove that the information entered by Appellants was false. Put differently, they argue that reliance on the QAO's testimony, based upon a spreadsheet generated by the Department using registration information in its database, does not constitute proof that the information entered into the analyzer and the MV-431, the Department's
**(Footnote continued on next page…)**

8

with respect to its denial of Appellants' appeals of the safety fraudulent recordkeeping suspensions and its denial of Zaidi's appeal of the emission fraudulent recordkeeping suspension.

Fraudulent recordkeeping is not defined by the safety inspection regulations but has been described by this Court as occurring in the context of safety inspections "when an entry in the record, the MV-431 [(Department's inspection log

---

paper inspection report sheet, was inaccurate and is fatal to the Department's case. Rather, they contend that the Department was required to prove the registration counties of the vehicles inspected by producing the vehicles' registration cards. Appellants rely upon Pennsylvania Rule of Evidence 1002, Pa.R.E. 1002, which corresponds to the common law "best evidence rule" and requires an original writing in order to prove its content.

We agree with the Department that Appellants waived any argument involving the best evidence rule because they did not object to the admission of the spreadsheet as an exhibit and did not preserve the issue in their concise statement of errors complained of on appeal. A party may only claim error in a ruling to admit evidence if the party "(A) makes a timely objection, motion to strike, or motion *in limine*; and (B) states the specific ground, unless it was apparent from context." Pa.R.E. 103(a)(1)(A)-(B). Further, "[i]ssues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." *See* Rule 1925(b)(4)(vii) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b)(4)(vii).

9

form[11])], is *false*, entered *intentionally*[,] and *with the purpose of deceiving*."[12] *Firestone Tire & Serv. Ctr., O.I.S. No. 798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005) (emphasis supplied) [quoting *Fiore Auto Serv. v. Dep't of Transp., Bureau of Motor Vehicles*, 735 A.2d 734, 737 (Pa. Cmwlth. 1998)]. The trial court made no findings—and the Department makes no argument—that the safety inspection records at issue were false or entered with the purpose of deceiving.[13] Further, there is no apparent evidence of the falsity of the safety inspection records entered on the MV-431. This failure to meet the elements of

---

[11] (*See* N.T. at 23, R.R. at 63-64a.) Formerly, MV-431 forms were kept on paper and signed by a mechanic for each inspection, *see* 67 Pa. Code § 175.42(b)(1) ("[a]t stations utilizing Form MV-431 . . . , the certified mechanic who performed the entire inspection shall place his signature in the appropriate column . . ."); *see also Fairfield Ford/VW/Hyundai/Mitsubishi v. Dep't of Transp., Bureau of Motor Vehicles*, 823 A.2d 267, 269 and n.3 (Pa. Cmwlth. 2003) (describing paper form), but "there are now several electronic softwares that are available that are approved by the Department of Transportation for use" (N.T. at 24, R.R. at 64a). In this case, BJM maintained a paper copy of records (*id.*), but it is apparent that the reports sent to the QAO and entered as exhibits were generated from data entered into a computer and formatted as an MV-431 without an inspector's physical signature (*see, e.g.*, MV-431 Form, R.R. at 122a). Section 175.42(b)(2) and (d)(2) of the Department's safety inspection regulations delineates the requirements for inspection stations using electronic data collection and storage programs. *See, generally* 67 Pa. Code § 175.42(b)(2) and (d)(2).

[12] We are troubled by the lack, in many instances, of administrative definitions for what are schedules of administrative penalties. While over the years the courts have stepped in and established definitions of terms like "fraudulent recordkeeping," this is a function that would be better handled by the legislature or the Department under its authority to promulgate regulations.

[13] Rather, the Department contends that a failure to successfully pass a valid emission inspection rendered the vehicles incapable of having a safety inspection performed and, therefore, that any records of such inspection were fraudulent. Section 177.51(c) of the emission inspection regulations provides that "[a] safety inspection certificate for a vehicle subject to an emission inspection may not be affixed to the vehicle until the subject vehicle has passed an emission inspection or received an exemption or a waiver." 67 Pa. Code § 177.51(c). Section 177.51(c) does *not* prevent an inspector from performing a safety inspection, and with particular respect to this violation, making records of such inspection.

fraudulent recordkeeping in the safety inspection context is fatal to this portion of the suspensions.

Fraudulent recordkeeping in the emission inspection context is defined by Section 177.601 of the emission inspection regulations, in relevant part, as "[a] recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals . . . [t]hat a certificate of inspection was issued without compliance with the required inspection procedure." 67 Pa. Code § 177.601. The trial court found that a county other than the registration county was manually entered into the electronic analyzer with respect to the vehicles inspected by Zaidi and Walker. With respect to the vehicles that Zaidi inspected, it was not shown that the entry of the wrong county falsified or concealed that a certificate of inspection was issued *without compliance with required inspection procedure*, because the procedure (i.e., a visual test) was identical for both the correct county of registration and the county entered. Thus, the trial court erred in denying Zaidi's appeal of the emission fraudulent recordkeeping suspension.

Walker, on the other hand, entered a county for which the inspection procedure was different, requiring an OBD test as opposed to a visual test. With respect to his emission inspections, the recordkeeping entry was not in accordance with fact and the trial court did not err in inferring that the entry was intended to conceal that the certificate of inspection was issued without compliance with the required procedure. BJM's owner, as holder of the certificate of appointment as an emission inspection station, was responsible for every emission inspection conducted at the station, 67 Pa. Code § 177.421(a)(6)(i). Thus, Walker and BJM were properly suspended for fraudulent recordkeeping with respect to emission inspections.

11

**Faulty Inspection, Emission**

Appellants argue that the Department failed to prove that they performed faulty emission inspections because it was required, under Section 177.601 of the emission inspection regulations, to "demonstrate[] that the outcome of the inspection *would have been* different if the inspection had been performed properly." 67 Pa. Code § 177.601 (emphasis supplied). The Department relies on the trial court's reasoning that by entering the incorrect county and performing the incorrect emission testing "on at least some of the vehicles," Appellants *per se* deviated from the regulations, "and *more likely than not* impacted the overall outcomes of the inspections of those vehicles."[14] [Trial Ct. Op. at 12 (emphasis supplied).]

A "likely impact" is insufficient proof of faulty inspection under Section 177.601 of the emission inspection regulations; rather, what is required is a demonstration that the "outcome of the inspection *would have been* different," or a *certainty* of a different outcome. Thus, even though there is evidence supporting the trial court's determination that the county where the vehicles Walker inspected were

---

[14] The trial court's citation to *Ruffo v. Department of Transportation, Bureau of Motor Vehicles*, 823 A.2d 219, 223 (Pa. Cmwlth. 2003), is inapposite, as our reasoning that faulty inspections meant those "that . . . deviate from the procedures set forth [in the emission inspection regulations]" was superseded by the Department's own regulatory definition of "faulty inspection" in the emission inspection regulations, which requires a showing that a different outcome would have been reached. *Ruffo* was decided in Febraury 2003, and the current regulatory definition of faulty inspection was adopted on November 21, 2003. *See* 33 Pa.B. 5706 (Nov. 21, 2003).

Likewise, the trial court's reliance on *Tropeck v. Department of Transportation, Bureau of Motor Vehicles*, 847 A.2d 208 (Pa. Cmwlth. 2004), is misplaced. In *Tropeck*, a case involving a faulty inspection violation in the context of a *safety* inspection, we held that "[the Department] does not need to present 'concrete' evidence that a vehicle inspection was performed improperly. Rather, [the Department] only has to prove by a preponderance of the evidence, i.e., that it is more likely than not, that a vehicle inspection was performed improperly." *Id.* at 212. Faulty inspection, in the safety inspection context, is an undefined term. For emission inspections, the Department has chosen a definition of the offense of "faulty inspection" requiring that the outcome *would have been* different.

12

registered (Dauphin) required an OBD inspection, whereas the county he manually entered for those vehicles (Lycoming) did not, there is no evidence or finding that the outcome of the inspection—a passing result—would have been different. For the vehicles inspected by Zaidi, the same test was required for the county of registration (Luzerne) as the county entered (Lycoming). Thus, there is not even the likelihood of a different outcome. For these reasons, the trial court erred in denying Appellants' appeals with respect to emission faulty inspection suspensions.

**Improper Assigning of Certificates of Inspection, Emission and Safety**

Appellants next argue that the Department failed to prove that they improperly assigned certificates of inspection because it failed to prove that the safety or emission inspections were improperly conducted. It is agreed by the parties that the term "improperly assigning certificate of inspection," used at 67 Pa. Code § 175.51(a)(2)(v) with respect to safety inspections, and in the emission inspection regulations at 67 Pa. Code §§ 177.602(a)(1)(xii) (emission inspection stations) and 177.603(a)(1)(xii) (emission inspectors), is not defined.

When a term in a statute—or regulation[15]—is undefined, we turn to the rules set forth in the Statutory Construction Act of 1972. 1 Pa.C.S. §§ 1501-1991. The object of statutory or regulatory interpretation is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S. § 1921(a); *Pa. Associated Builders & Contractors, Inc. v. Dep't of Gen. Servs.*, 932 A.2d 1271 (Pa. 2007). Every provision must be construed, if possible, to give effect to all provisions with each word given meaning and not treated as mere surplusage. *Bayada Nurses, Inc. v. Dep't of Lab. & Indus.*, 958 A.2d 1050, 1055 (Pa. Cmwlth. 2008); 1 Pa.C.S. § 1921(a). Further, provisions are in *pari materia* when they relate to the same persons or things or to

---

[15] Statutory construction rules apply equally to the interpretation of administrative regulations. *Bayada Nurses, Inc. v. Dep't of Lab. & Indus.*, 958 A.2d 1050, 1055 (Pa. Cmwlth. 2008).

the same class of persons or things and must be construed together, if possible. 1 Pa.C.S. § 1932.

We agree with the Department that the meaning of improper assigning of a certificate of inspection means deviating from the regulations applicable to assigning a certificate of inspection. Several provisions of the Vehicle Code and Department regulations expressly prohibit the assignment (or "furnishing," "affixing," or "issuance") of a certificate of inspection without an inspection done

14

in compliance with the Department's regulations, both with respect to safety and emission inspections.[16, 17]

[16] Section 4727(b) of the Vehicle Code provides that "[a]n official certificate of inspection shall not be issued unless the vehicle . . . is inspected and found to be in compliance with the provisions of this chapter including any regulations promulgated by the department . . . ." 75 Pa.C.S. § 4727(b). Section 4730(b) of the Vehicle Code provides that "[n]o official inspection station shall furnish . . . certificates of inspection and approval to . . . any . . . person except upon an inspection made in accordance with the requirements of [Chapter 47 of the Vehicle Code]." 75 Pa.C.S. § 4730(b).

*See also* 67 Pa. Code § 175.41(a) ("[n]o [safety] certificate of inspection . . . may be marked or affixed to a vehicle unless the vehicle has successfully passed inspection, meeting the requirements of [the Vehicle Code, 75 Pa.C.S. §§ 101-9805,] and [Chapter 175 of the Department's regulations (safety inspection regulations)]." Section 177.51(c) of the *emission* inspection regulations provides that "[a] safety inspection certificate for a vehicle subject to an emission inspection may not be affixed to the vehicle until the subject vehicle has passed an emission inspection or received an exemption or a waiver." 67 Pa. Code § 177.51(c).

Section 177.291(a) of the emission inspection regulations provides that "[t]he Department will issue a certificate of emission inspection, through an official emission inspection station, . . . for a subject motor vehicle which meets . . . the following: . . . [t]he motor vehicle has passed an inspection or reinspection performed by the emission inspection station." 67 Pa. Code § 177.291(a). Section 177.291(g) provides that "[a] deviation or change in the procedure specified in this section shall be considered an improper or faulty inspection and the certificate of emission inspection issued as a result shall be void." 67 Pa. Code § 177.291(g). Section 177.291(h) provides that "[a] certificate of emission inspection may not be marked and affixed to a vehicle until the vehicle has successfully passed an emission inspection meeting the emission requirements of Chapters 45 and 47 of the Vehicle Code (relating to other required equipment and inspection of vehicles) and this chapter." 67 Pa. Code § 177.291(h).

[17] Appellants cite the emission inspection regulations' definition of "improper inspection" as meaning "[f]ailure to perform an emission inspection as required by this chapter or any other deviation in the testing procedure provided that it can be demonstrated that the outcome of the inspection would have been the same if the inspection had been performed properly," 67 Pa. Code § 177.601, and suggest that the regulatory offense of improper assigning of certificate of inspection be read *in pari materia*. (Appellants' Br. at 37.) However, "improper inspection" is itself a species of violation under the emission inspection regulations' schedules of penalties for emission inspection stations and inspectors, *see* 67 Pa. Code §§ 177.602(a)(ix), 177.603(a)(ix), and to give improperly assigning certificate of inspection the same meaning would fail to give effect to all provisions by defining two violations identically.

15

The trial court found that "the record clearly shows that Appellants performed several emission[] inspections which deviated from regulations and then assigned certificates of inspection to these vehicles even though they had not undergone the proper emission[] testing." (Trial Ct. Op. at 13.) This is clearly the case with the vehicles inspected by Walker: he was required as part of OBD testing to "[i]nitiate the official test by scanning or manually imputting the required vehicle and owner information," 67 Pa. Code § 177.203(2)(i), and to perform the other steps of an OBD test on the vehicles registered in Dauphin County, 67 Pa. Code § 177.203(2)(ii)-(vii). On the other hand, it is not apparent to the Court that Zaidi violated any specific regulatory provision by entering the wrong county, as the procedure for visual inspection does not specifically require the entry of vehicle and owner information, *see* 67 Pa. Code § 177.203(d), and there is no indication from the record that the test as performed was otherwise noncompliant with the regulations. Thus, we reverse the improper assigning certificate of inspection for emission violations with respect to Zaidi and affirm with respect to Walker and BJM.

With respect to improperly assigning certificate of inspection for safety violations, Section 177.51(c) of the emission inspection regulations provides that "[a] safety inspection certificate for a vehicle subject to an emission inspection may not be affixed to the vehicle until the subject vehicle has passed an emission inspection or received an exemption or a waiver." 67 Pa. Code § 177.51(c). As the Department's case is based upon the occurrence of noncompliant emission inspections, the Court affirms the trial court's determination regarding Walker and BJM and reverses with respect to Zaidi.

**Credit for Overturned Suspensions in Another Case**

Appellants ask that the Court "use its discretion" to apply the "time served" in the 2007 Grand Canyon matter, where the trial court ultimately found

16

BJM had not committed the violations resulting in the suspension of its safety inspection privileges. (Appellants' Br. at 38.) As we reverse with regard to fraudulent recordkeeping as it applies to BJM's certificate of appointment as a safety inspection station, this relates only to the two-month suspension for improper assigning of safety certificates of inspection. BJM does not identify, and our research does not disclose, authority to award time served as suggested by Appellants. That is, to take time "wrongly" served on a suspension where an appeal was ultimately sustained—in a case not before the Court—and apply it to a different administrative suspension. Thus, we cannot grant the relief BJM seeks.

**Lesser Included Offense Argument**

Finally, Appellants argue that they may be liable for careless recordkeeping as a lesser included offense of fraudulent recordkeeping. This argument is irrelevant with respect to the fraudulent recordkeeping charges for the safety inspections, as we reverse the trial court's determination on other grounds. It is also not relevant to the emission inspections conducted by Zaidi, as we find that those were not fraudulent under the definition of fraudulent recordkeeping found in the emission inspection regulations.

As we find that the trial court did not err in finding that Walker had committed fraudulent recordkeeping, there is no ground to reverse with respect to his and BJM's emission fraudulent recordkeeping violation.

**Conclusion**

In summary, we reverse the trial court's denial of Appellants' respective appeals of their suspensions for fraudulent recordkeeping of safety records; reverse the trial court's denial of Zaidi's appeal of his suspension for fraudulent recordkeeping of emission records; reverse the trial court's denial of Appellants' respective appeals of their suspensions for faulty inspection, emission;

17

and reverse the trial court's denial of Zaidi's appeal of his suspension for improper assigning certificate of inspection for emission and safety. We affirm the trial court's order with respect to the balance of the violations.

In light of the foregoing, we affirm in part and reverse in part.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Syed Zaidi,                   :

             Appellant      :

                   :

          v.          :   No. 996 C.D. 2023

                   :   No. 998 C.D. 2023

Commonwealth of Pennsylvania,   :

Department of Transportation,     :

Bureau of Motor Vehicles       :

Grady Walker, III,           :

             Appellant      :

                   :

          v.          :   No. 997 C.D. 2023

                   :   No. 999 C.D. 2023

Commonwealth of Pennsylvania,   :

Department of Transportation,     :

Bureau of Motor Vehicles       :

BJM Automotive, LLC,       :

             Appellant      :

                   :

          v.          :   No. 1000 C.D. 2023

                   :   No. 1001 C.D. 2023

Commonwealth of Pennsylvania,   :

Department of Transportation,     :

Bureau of Motor Vehicles       :

## **O R D E R**

AND NOW, this 5th day of June, 2025, the Order of the Court of Common Pleas of Dauphin County is REVERSED, IN PART, as follows:

With respect to Syed Zaidi's appeals of his suspensions for fraudulent recordkeeping, emission and safety; faulty inspection, emission; and improper assigning of certificates of inspection, emission and safety, the Order of the Court of Common Pleas is REVERSED.

With respect to Grady Walker, III's appeals of his suspensions for fraudulent recordkeeping, safety; and faulty inspection, emission, the Order of the Court of Common Pleas is REVERSED.

With respect to BJM Automotive, LLC's appeals of its suspensions for fraudulent recordkeeping, safety, and faulty inspection, emission, the Order of the Court of Common Pleas is REVERSED.

In all other respects, the Order of the Court of Common Pleas is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita